1   Evert Caldwell, Pro Se
    3221 Verdure Lane
2   Birmingham, Alabama 35226
    Telephone (205) 777-1826
3   Email: evertcaldwell@gmail.com

4

5              **UNITED STATES DISTRICT COURT**

6                **DISTRICT OF NEVADA**

7

8

9

10  **EVERT CALDWELL**, an individual,    )   2:12-CV-0458-KJD-GWF

               Plaintiff,       )
11                       )
           vs.            )
12                       )
   **COMPASS ENTERTAINMENT GROUP LLC,** )  **VERIFIED COMPLAINT**
13  a Nevada corporation;         )
   **ROUNDER, INC.**           )
14  a Florida corporation;        )  **DEMAND FOR JURY TRIAL**
   **THOMAS A. MCDONALD,**
15  **SUZANNE M. LABELLE,**
   **GREGORY T. MCDONALD,**
16  **JEFFREY P. KRANZDORF,**
   **GREGORY J. MCDONALD,** individuals; and
17  DOES 1 through 10, inclusive,

18

19          Defendants

20

21    EVERT CALDWELL, self-represented Plaintiff, brings this complaint against Defendants

22  COMPASS ENTERTAINMENT GROUP LLC, ROUNDER, INC, SUZANNE M. LABELLE,

23  THOMAS A. MCDONALD, GREGORY T. MCDONALD, JEFFREY P. KRANZDORF,

24  GREGORY J. MCDONALD, and alleges as follows:

25

26

## INTRODUCTION

1. Defendants Greg T. McDonald and Tom McDonald purport to have entered into a contractual arrangement with Plaintiff Evert Caldwell in order to obtain an exclusive license to use the trademarks and trade names of ROUNDER LIFE ENTERPRISES LLC, an Alabama limited liability company.

2. Defendants Greg T. McDonald and Tom McDonald purport to have also entered into a contractual arrangement with Plaintiff Evert Caldwell in order to obtain an exclusive license to use the trademarks and trade names of ROUNDER ENTERPRISES, INC. a South Carolina corporation.

3. Defendants Greg T. McDonald and Tom McDonald purport to have entered into a contractual arrangement with Plaintiff Evert Caldwell in order to obtain (51%) controlling interest of ROUNDER ENTERPRISES, INC., a South Carolina corporation.

4. Defendants Gregory McDonald and Tom McDonald, as representatives of Compass Entertainment LLC and Heritage Television Productions, Inc. purport to have entered into a contractual co-production agreement with Plaintiff Evert Caldwell.

5. Plaintiff alleges that Defendants Greg T. McDonald and Tom McDonald knowingly relied upon deception and artifice in order to fraudulently induce Evert Caldwell to enter into these contractual discussions.

6. Defendants Greg T. McDonald and Tom McDonald failed to execute or otherwise finalize the agreements in question yet did, without legal right, and with the assistance of Defendant Jeffrey P. Kranzdorf, transfer and otherwise assume control of the assets of Rounder Enterprises Inc., inclusive of the Rounder trademarks, and thereafter transfer such assets to defendant Compass Entertainment Group LLC, an entity which is controlled by Greg T. McDonald and his adult children, Defendants Gregory J.

McDonald, Suzanne Labelle and Tom McDonald, of which only the last two, Tom and Suzanne, are listed as owners in the Nevada Secretary of State database.

7. The individual Defendants have purported to be employees and owners of the Plaintiff's company Rounder Enterprises Inc., while simultaneously stripping it of its assets and letting it languish unattended, all the while attempting to benefit from its prior good name and standing within the gaming industry by falsely claiming credit for its earlier success prior to their involvement, as well as by fabricating accomplishments and activities which have no factual basis.

8. Defendants have promoted and enriched themselves at the detriment of the goodwill of the Plaintiff's company and Rounder trademarks by issuing fraudulent and otherwise deceptive press releases, promotional videos and other online assertions that have no basis in truth.

9. Without regard for any contractual agreements that may have been in place at any time, the Defendants have assumed 100% control of the Plaintiff's company's assets and trademarks, without consultation or consideration, and thereafter utilized those Plaintiff assets to enter into contracts and agreements beneficial only to themselves and not the Plaintiff.

## JURISDICTION AND VENUE

10. Defendant COMPASS ENTERTAINMENT GROUP LLC is a corporation incorporated under the laws of the State of Nevada; Defendant ROUNDER, INC. is a corporation incorporated under the laws of the State of Florida; Defendants GREG T. MCDONALD, GREGORY J. MCDONALD, SUZANNE M. LABELLE, THOMAS A. MCDONALD are citizens of Florida and/or Nevada; Defendant JEFFREY P. KRANZDORF is a citizen of California; Plaintiff EVERT CALDWELL is a citizen of Alabama.

11. The amount in dispute in this proceeding is in excess of Seventy-Five Thousand U.S. Dollars ($75,000) and, because of the complete diversity of citizenship of the parties to this proceeding relating to trademark, this court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1), §1338(a,b), and §1400(a,b)

12. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. §1391(a)(2) as a substantial part of the events or omissions giving rise to the claim occurred in Nevada by a Nevada-based Defendant.

## THE PARTIES

13. Plaintiff EVERT CALDWELL is an individual citizen of Birmingham, Alabama.

14. Plaintiff is informed and believes and therefore alleges that Defendant COMPASS ENTERTAINMENT GROUP LLC ("Compass Entertainment") was, and at all times mentioned herein, a corporation incorporated under the laws of the State of Nevada which only came into existence on April 6, 2009.

15. Plaintiff is informed and believes and therefore alleges that Defendant ROUNDER, INC. ("Rounder, Inc") was, and at all times mentioned herein, a corporation incorporated under the laws of the State of Florida under document number P04000023649.

16. Plaintiff is informed and believes and therefore alleges that Defendant GREGORY T. MCDONALD also known as GREG MCDONALD ("Greg McDonald") is, and at all times mentioned herein, was: (a) over the age of majority; (b) not in the service of the United States military; (c) not incompetent; and (d) a resident of the State of Florida.

17. Plaintiff is informed and believes and therefore alleges that Defendant, JEFFREY P. KRANZDORF ("Jeffrey Kranzdorf") is, and at all times mentioned herein, was: (a) over the age of majority; (b) not in the service of the United States military; (c) not incompetent; and (d) a resident of the State of California.

18. Plaintiff is informed and believes and therefore alleges that Defendant GREGORY J. MCDONALD, also known as GREGORY MCDONALD JR. ("Gregory McDonald") is, and at all times mentioned herein, was: (a) over the age of majority; (b) not in the service of the United States military; (c) not incompetent; and (d) a resident of the State of Florida and/or the State of Nevada.

19. Plaintiff is informed and believes and therefore alleges that Defendant SUZANNE M. LABELLE, also known as SUZANNE MCDONALD ("Suzanne Labelle") is, and at all times mentioned herein, was: (a) over the age of majority; (b) not in the service of the United States military; (c) not incompetent; and (d) a resident of the State of Florida and/or the State of Nevada.

20. Plaintiff is informed and believes and therefore alleges that Defendant, THOMAS A. MCDONALD, also known as TOM MCDONALD ("Tom McDonald"), is, and at all times mentioned herein, was: (a) over the age of majority; (b) not in the service of the United States military; (c) not incompetent; and (d) a resident of the State of Florida and/or the State of Nevada.

21. Plaintiff is informed and believes and therefore alleges that, at all times relevant hereto, COMPASS ENTERTAINMENT GROUP LLC, ROUNDER, INC, GREG T. MCDONALD, GREGORY J. MCDONALD, SUZANNE M. LABELLE, THOMAS A. MCDONALD, JEFFREY P. KRANZDORF (collectively "Defendants") were affiliates, joint venturers, had an agency relationship, and/or that those parties were each the alter egos of each other, such that they are jointly and severally obligated for the amounts owing to Plaintiff as alleged herein.

22. Plaintiff is informed and believes and therefore alleges that, at all times mentioned herein, Greg McDonald, Jeffrey Kranzdorf, Gregory McDonald, Suzanne Labelle and Tom McDonald were each a manager, member, officer, director, shareholder, owner, affiliate, and/or agent of Compass Entertainment Group LLC.

23. Plaintiff is informed and believes and therefore alleges that Greg McDonald, Jeffrey Kranzdorf, Gregory McDonald, Suzanne Labelle and Tom McDonald have used the corporate forms of Compass Entertainment Group LLC; Compass Entertainment LLC; Compass Entertainment; Compass LLC, Heritage Entertainment, Inc.; Heritage Entertainment, LLC; Heritage Television Productions, LLC; Tag Florida Partners, LLC; GTS, LLC, Rounder, Inc., Thomas A. Parker Trust, if any, to wrongfully generate income for him/herself and/or entities owned and/or controlled in whole or in part by him/herself to the detriment of the Plaintiff.

24. In so doing, Plaintiff is informed and believes and therefore alleges that Greg McDonald, Jeffrey Kranzdorf, Gregory McDonald, Suzanne Labelle and Tom McDonald have utilized the corporate forms of Compass Entertainment Group LLC; Compass Entertainment LLC; Compass Entertainment; Compass LLC, Heritage Entertainment, Inc.; Heritage Entertainment, LLC; Heritage Television Productions, LLC; Tag Florida Partners, LLC; GTS, LLC, Rounder, Inc., Thomas A. Parker Trust, if any, as their personal businesses and alter ego, undercapitalized and intermingled business funds within these entities, failed to properly maintain Compass Entertainment Group LLC; Compass Entertainment LLC; Compass Entertainment; Compass LLC, Heritage Entertainment, Inc.; Heritage Entertainment, LLC; Heritage Television Productions, LLC; Tag Florida Partners, LLC; GTS, LLC, Rounder, Inc., Thomas A. Parker Trust, as distinct entities, and misrepresented their capacities with, and the nature of, these entities, if any, thereby defrauding Plaintiff such that recognizing Compass Entertainment Group LLC; Compass Entertainment LLC; Compass Entertainment; Compass LLC, Heritage Entertainment, Inc.; Heritage Entertainment, LLC; Heritage Television Productions, LLC; Tag Florida Partners, LLC; GTS, LLC, Rounder, Inc., Thomas A. Parker Trust, as distinct entities would result in fraud and injustice upon the Plaintiff and the corporate veils of Compass Entertainment Group LLC; Compass Entertainment LLC; Compass

Entertainment; Compass LLC, Heritage Entertainment, Inc.; Heritage Entertainment, LLC; Heritage Television Productions, LLC; Tag Florida Partners, LLC; GTS, LLC, Rounder, Inc., Thomas A. Parker Trust, if any, should be deemed pierced and set aside and Greg McDonald, Jeffrey Kranzdorf, Gregory McDonald, Suzanne Labelle and Tom McDonald held jointly and severable liable for the amounts owing to Plaintiff as alleged herein.

## FACTS COMMON TO ALL CLAIMS

**FRAUDULENT INDUCEMENTS**

25. Plaintiff met with Defendant Greg McDonald "Sr." throughout September and October of 2008 to discuss the viability and profitability of working together to the benefit of each party via the promotion of the Plaintiff's magazine and other financial opportunities related to the Rounder brand.

26. Defendant Greg McDonald presented the Plaintiff with promotional materials purporting to display the accomplishments and other successes of his related entities Compass Entertainment LLC and Heritage Television Productions, Inc., both represented to the Plaintiff as being valid and successful Florida based corporations under his control.

27. Greg McDonald also presented to the Plaintiff a promotional video that conveyed, among other things since proven to be untrue, that Compass and Tag Entertainment, as working partners, "would be producing family oriented films for years to come."

28. Plaintiff has since learned that no such entity named COMPASS ENTERTAINMENT LLC, has ever been a legally registered corporation in the State of Florida and could therefore not ever have accomplished those things which the Defendants had attributed to it in order to induce the Plaintiff to enter into contractual agreements.

29. Plaintiff has since learned that Heritage Television Productions, Inc. is a defunct Florida corporation registered to Defendant Gregory J. McDonald (Jr.), which appears to have

been in existence for less than two years at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819, dissolving shortly after these negotiations took place.

30. As such, Heritage Television Productions, Inc. could therefore not ever have accomplished those things attributed to it by the Defendants in order to induce the Plaintiff to enter into contractual agreements.

31. The video also stated that Compass produced the feature film "Deal" with Burt Reynolds as well as 'feature films' SUPERCROSS, "and other family-oriented films like POPSTAR, starring Aaron Carter, and MOTOCROSS KIDS".

32. As Compass did not exist in 2008, when the poker-themed movie "Deal" was produced, this was a fraudulent claim.

33. Compass could also not have produced Supercross in 2005, nor could it have produced the movie Popstar in 2005, or Motocross Kids in 2004, simply because Compass, in any form, did not exist until 2009.

34. Plaintiff has also discovered that the Federal Department of Justice may plan to control most of these films due to the prosecution of the founder of Tag Entertainment, Steven Kent Austin, for defrauding the films' investors.

35. The video also stated "Compass Entertainment has been a key advisor and consultant to the company responsible for shaping music icons N'SYNC, The Backstreet Boys, Aaron Carter, and O-Town."

36. At the time, Defendant Greg McDonald personally claimed his association related to the "production of the music videos" was as a 'consultant'.

37. Plaintiff has since learned that Greg McDonald was actually the President of Trans Continental Records Inc. and that it has been sued by all of these music acts for fraud-related torts and ultimately put into Chapter 11 bankruptcy on May 9th 2007, long prior to the inception of Compass Entertainment.

38. Plaintiff has also learned that Defendant Greg McDonald was a partner and/or key officer in several of 'Boy Band Creator' Lou Pearlman's businesses, including but not limited to, Trans Continental Records Inc., Trans Continental Television Productions Inc., Trans Continental Talent Inc., Trans Continental Entertainment Group Inc., and Fashion Rock.

39. Plaintiff alleges that of the businesses listed, the only one mentioned by the Defendant Greg McDonald was Fashion Rock, which he described as "a successful business that held large modeling conventions."

40. No mention was made of Lou Pearlman's involvement with Fashion Rock till well after the Plaintiff signed contracts with the Defendants.

41. Although Greg McDonald did refer to the fact that Lou Pearlman had been convicted of bank fraud in 2007 related to a $300 million Ponzi scheme and sentenced to 25 years in jail, he failed to inform the Plaintiff that Pearlman had been his long-time associate and business partner during the commission of that crime.

42. Plaintiff has since learned that Fashion Rock was the successor of the bankrupt company, Trans Continental Entertainment Group Inc., which Defendant McDonald and Lou Pearlman held controlling interest in, and which was accused by the State of New York Consumer Protection Board of being a 'photo mill scam' and was also the subject of a book on modeling scams.

43. Plaintiff alleges that Defendant Greg McDonald withheld information regarding the extent of the Defendants' association with this individual and the businesses they were involved in, and that had he been aware of this information, the Plaintiff would not have entered into any business transaction with the Defendants.

44. Greg McDonald also presented Plaintiff with a copy of MAKES & MODELS MAGAZINE stating that it was an ongoing project for which he was the co-publisher.

45. Plaintiff has since learned that Greg McDonald did not contribute to the magazine in any documented capacity and that it had ceased publication prior to their meeting, and has not

been published since, despite the fact that Defendants now display a promotional video that states "Compass has now expanded it's media reach with Print Publications, like MAKES & MODELS MAGAZINE"

46. The Plaintiff has since learned that one Samuel W. Ballinger incorporated Makes and Models Magazine, Inc. in 2004 and there is no record of the Defendants ever having been listed as members of the corporation or as a co-publisher in any publication.

47. Records show that the entity was defunct between 2008 and December 2010, at the time the Defendants made their assertions of association.

48. In 2007, Samuel Ballinger's other company, United Prescription Services, was accused by the Drug Enforcement Administration of unlawfully dealing in controlled substances and effectively shut down.

49. Sam Ballinger is a known business associate of Domemio L. Massari (disbarred attorney and convicted felon) and John Stanton (accused of corporate malfeasance).

50. Plaintiff alleges that Defendants withheld this information and that had he been aware of the Defendants' past and, as claimed, current association with any of these individuals he would not have entered into any business transaction at the time.

51. The video also states that "Compass" has been shaping our cultural heritage for over thirty years.

52. Compass Entertainment LLC has never been a legally registered company in Florida, and Compass Entertainment Group LLC was not a registered company in Nevada until April 2009, therefore "Compass'" could not have been shaping anyone's cultural heritage for thirty years as Plaintiff was led to believe in September 2008.

53. The video categorically states that Greg McDonald owns "Compass".

54. Greg McDonald could not have owned Compass Entertainment LLC, (Compass) as Plaintiff was led to believe in September 2008 simply because Compass Entertainment LLC has never been a registered company in Florida, and Compass Entertainment Group

LLC did not exist at the time, nor has Greg McDonald ever been listed as having an ownership position on corporate filings.

55. The video also stated: "Compass' other endeavors include entertainment related real estate like Elvis Presley's Palm Springs hideaway, Field of Dreams, and Sun Studios."

56. For the reasons listed above, and the inability to reasonably attribute ownership to it, "Compass" could not have included entertainment related real estate like Elvis Presley's Palm Springs hideaway, Field of Dreams, or Sun Studios, as Plaintiff was led to believe in September 2008.

57. The video also stated "The television production division of "Compass" has been a leader of innovative television programming" and "created the TV show, 'Making the Band'."

58. Again, such claims are unsustainable under examination, given that 'Making the Band' was created in 2000.

59. The video also stated, "Compass owns or administrates one of the most sought after music and television libraries in the world" and that "Compass owns the world wide lifestyle shows Luxury Connection and Heritage Report".

60. Compass simply could not have owned or operated the music and television library the video speaks of, as Plaintiff was led to believe in September 2008 and, since the "world wide television shows" entitled Luxury Connection and Heritage Report have never aired internationally, if at all, "Compass" could not have owned them, simply because they do not appear to have ever existed beyond conceptual footage, nor did Compass at the time.

61. Upon information and belief, Tom McDonald created, or otherwise edited, the various videos used to fraudulently induce the Plaintiff to enter into the purported contractual obligations with the Defendants, as well as those used to misrepresent the Rounder brand to both the general public and potential investors of World Series of Golf Inc. and Rounder, Inc. stock.

**ONGOING MISREPRESENTATIONS**

62. On November 24, 2008 Plaintiff received an email from Gregory McDonald which bore the title and address of "Producer, Compass Entertainment, LLC., NBC/UNIVERSAL 3000 Universal Studios Plaza, Building 17, Orlando,fl. 32819, (407)224-3904 office (407)321-229-2282 cell" which included an attachment "ROUNDER TV COPY.pdf" containing his personal submission of the Rounder Life promo video script.

63. Plaintiff has since learned that no entity by that name existed at that address such that it was operating legally within the State of Florida.

64. Upon current review of this purportedly professional submission, Plaintiff fails to note any significant editorial or production skills exhibited by the Defendant Gregory McDonald.

65. Current promotional material being disseminated by the Defendants includes the following claims. "COMPASS ENTERTAINMENT has been a leader in innovative television programming; producing MUSIC VIDEOS, FEATURE FILMS, COMMERCIALS and BROADCAST TELEVISION for major networks worldwide. With over 40 years experience in the music & TV business, Compass and its staff have also created professional associations with legendary music artists ELVIS PRESLEY, RICKY NELSON, SONNY & CHER, THE EAGLES, JERRY LEE LEWIS, FATS DOMINO, and pop sensations; THE BACKSTREET BOYS, N'SYNC, LFO, OTOWN and "MAKING THE BAND" TV Show (MTV & ABC). Compass' key staff were also the originators of SILVER EAGLE RECORDS & TIME-LIFE MUSIC, two of the most successful direct response marketing businesses in music history. Compass has now expanded its media reach with ROUNDER MAGAZINE, the very popular casino lifestyle magazine. With the popularity of poker and the celebrity attention, ROUNDER MAGAZINE has jumped off the pages into a new reality TV series Compass is producing, ROUNDERLIFE TV and a multi-episode Partnership with DONALD

TRUMP and his US POKER CHAMPIONSHIP. Compass and its producers have gone beyond broadcast television and print with the production of feature films including "DEAL" starring BURT REYNOLDS and SHANNON ELIZABETH; SUPERCROSS and other family oriented films like POPSTAR and MOTOCROSS starring AARON CARTER. Each of these films have achieved successful distribution world wide through companies such as WARNER BROTHERS, UNIVERSAL PICTURES, NEW LINE CINEMA AND TWENTIETH CENTURY FOX."

66. Defendants have, since their first meetings with the Plaintiff and continuing to this day, falsely misrepresented as their own, in the form of Defendant Compass Entertainment, the purported successes of entities which were either not successful, successful solely by the use of fraudulent means, or for whose success occurred long prior to the creation of the Defendant corporate entity.

## COMPASS / HERITAGE / CALDWELL CO-PRODUCTION AGREEMENT

67. On or about October 12, 2008, after being led to believe that there would be a buyout of his partners, Plaintiff Caldwell signed and delivered to Defendants a copy of a Co-Production Agreement by which Compass Entertainment LLC, Heritage Television Productions, Inc. and Evert Caldwell were to share equally in profits and ownership of programs produced using the Plaintiff's trademarks.

68. The "fraudulent inducements" noted above, along with the actual agreement provided by the Defendants, led Plaintiff to believe he was entering into negotiations with COMPASS ENTERTAINMENT LLC, a successful Florida limited liability company with its main place of business located at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819.

69. Further, Defendants led Plaintiff to believe he was entering into negotiations with Heritage Television Productions, Inc., a long-established and successful Florida company

with its main place of business also located at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819.

70. While Greg McDonald did, around that time, state that these enterprises would involve himself and his sons Gregory and Tom; no mention was ever made of his daughter Suzanne or her purported contribution, as regards skills or experience, in this context.

71. Defendants are alleged to have conspired to defraud the Plaintiff by preparing and attempting to execute this document by means of fraud and artifice.

72. The agreement stated, in part, that "While all three parties shall input into all creative and business decisions made in connection with the production, distribution and commercial exploitation of the Programs and all ancillary and allied products, goods and services arising in connection with the Programs; all final decisions (both creative and business) shall be made solely by Compass in the person of Greg McDonald or such person(s) as he may designate."

73. To the Plaintiff, this, along with the fact that it was the elder Greg McDonald who boasted his entertainment industry skills and accomplishments, gave the impression that it was Greg McDonald who was the person in operational control of either/both the fabricated Compass Entertainment LLC entity and/or Heritage Television Productions, Inc., not his son, Gregory.

74. The agreement's "document properties" indicates that it was last saved by Defendant Jeff Kranzdorf, (Jeffrey Paul Kranzdorf), long-time friend, associate, business partner and corporate attorney for Greg T. McDonald and Louis J. Pearlman in various entertainment-based enterprises.

75. The "footer" of the document includes the following notation "TAG FLORIDA PARTNERS, LLC.- TAG ENTERTAINMENT, INC., FIRST LOOK CO-PRODUCTION AGREEMENT, November 1, 2002"

76. Plaintiff has since learned that TAG FLORIDA PARTNERS, LLC is a defunct Florida corporation registered to Defendant Greg McDonald that has been linked to at least two convicted criminals, Louis J. Pearlman and Steve Austin. Its corporate status was revoked in 2005.

77. Plaintiff has since learned that no entity named COMPASS ENTERTAINMENT LLC, has ever been a legally registered corporation in the State of Florida and could therefore not have accomplished the things the Defendants attributed to it in order to induce the Plaintiff to sign the agreement.

78. Plaintiff has since learned that Heritage Television Productions, Inc. is a defunct Florida corporation registered to Defendant Gregory J. McDonald (Jr.), which appears to have been in existence for less than two years at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819, dissolving shortly after these negotiations took place.

79. As such, Heritage Television Productions, Inc. could not ever have accomplished those things attributed to it by the Defendants and used to induce the Plaintiff to sign the agreement.

80. Plaintiff has since learned that Defendant Compass Entertainment Group, LLC, the entity now purporting to be a signatory to the agreement, did not come into existence until April 5, 2009, almost six full months after the Plaintiff signed his personal copy of the contract bearing the name of the fabricated entity, Compass Entertainment LLC.

81. Contrary to any purported agreement, the Plaintiff has never been consulted with regard to providing input into any program or production, by any of the Defendants, beyond that involving the 2009 United States Poker Championship ("USPC") event.

82. Plaintiff has also never been provided with any financial statements related to productions arising from this agreement, despite the fact that the Defendants appear to have been enriched, and continue to benefit, from the unlawful use of the Plaintiff's Rounder marks.

83. Plaintiff contests the validity and enforceability of this agreement and seeks to have it annulled on the grounds that: a) it was entered into by means of fraudulent inducements, b) it relates to a non-existent entity, c) it was never properly executed.

## ROUNDER MAGAZINE TRADE MARK LICENSE TO COMPASS

84. On or about October 12, 2008, Plaintiff Evert Caldwell was fraudulently induced to enter into a licensing contract with the Defendants relating to the use of the Plaintiff's trademark "Rounder Magazine".

85. This trademark, serial number 77307292, is registered with the USPTO as "Rounder" under the category of "magazines about poker, poker related entertainment, food and women, but not computer games nor television shows".

86. The leading paragraph of the license stated "THIS AGREEMENT is made the ____ day of October 2008 by and between ROUNDER ENTERPRISES, INC. with its registered office located at 704 East McBee Avenue, Greenville, South Carolina 29601 Attn: Evert Caldwell, Fax: 205-856-5504 (evert@rounderlife.com) (hereinafter referred to as "the Owner") and COMPASS ENTERTAINMENT LLC, a Florida limited liability company with it main place of business located at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819; Attn: Tom McDonald, Fax: (407) 224-_____, e-mail: tomm@luxuryconnection.tv (jointly hereinafter referred to as "the Licensee")".

87. The Word document properties indicate that Defendant Jeffrey P. Kranzdorf, Attorney at Law, authored it.

88. The "fraudulent inducements" used to deceive the Plaintiff, along with the actual agreement provided by the Defendants, led Plaintiff to believe he was entering into negotiations with COMPASS ENTERTAINMENT LLC, a successful Florida limited liability company with its main place of business located at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819.

89. No such entity has ever been a registered corporation in the State of Florida.

90. Plaintiff has since learned that Defendant Compass Entertainment Group, LLC, the entity now purporting to be a signatory to the agreement, did not come into existence until April 5, 2009, almost six full months after the Plaintiff signed his copy of the contract bearing the fictitious (Florida) Compass Entertainment LLC name.

91. Plaintiff contests the validity and enforceability of this agreement and seeks to have it annulled on the grounds that: a) it was entered into by means of fraudulent inducements, b) it relates to a non-existent entity, c) it was never properly executed, d) all terms of the contract were breached by the Defendants.

## ROUNDER LIFE TRADE MARK LICENSE TO COMPASS

92. On or about October 12, 2008, Plaintiff Evert Caldwell was fraudulently induced to enter into a contract with the Defendants relating to the use of the Plaintiff's trademark "Rounder Life".

93. The leading paragraph of the license stated "THIS AGREEMENT is made the ____ day of October 2008 by and between ROUNDER LIFE ENTERPRISES LLC, an Alabama limited liability company with its main place of business located at 924 Chalkville School Road, Birmingham, Alabama 35215, Attn: Evert Caldwell, Fax: 205-856-5504 (evert@rounderlife.com) (hereinafter referred to as "the Owner") and COMPASS ENTERTAINMENT LLC, a Florida limited liability company with it main place of business located at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819; Attn: Tom McDonald, Fax: (407) 224-____, e-mail: tomm@luxuryconnection.tv (jointly hereinafter referred to as "the Licensee")".

94. The Word document properties indicate that Defendant Jeffrey P. Kranzdorf, Attorney at Law, authored it.

95. As part of the agreement, Licensee was required to produce and air on a national basis a Program, no less frequently than a quarterly basis. Defendants have not done so.

96. As required by section 6.4 of the agreement "The Licensee shall not during the Term of this Agreement or at any future time seek to register or use the Trade mark in its own name."

97. Defendants have breached this section by registering the Plaintiff's trademarks in their own name.

98. As required by section 6.7 of the agreement, "The Licensee shall hold all goodwill generated by its operation of the Trade Mark under this Agreement as bare trustee for the benefit of the Owner."

99. Defendants have breached this section by assuming all goodwill generated by the marks as being their own and not the Plaintiff Owner.

100.    The "fraudulent inducements" used to deceive the Plaintiff, along with the actual agreement provided by the Defendants, led Plaintiff to believe he was entering into negotiations with COMPASS ENTERTAINMENT LLC, a successful Florida limited liability company with its main place of business located at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819.

101.    No such entity has ever been a registered corporation in the State of Florida.

102.    Plaintiff has since learned that Defendant Compass Entertainment Group, LLC, the entity now purporting to be a signatory to the agreement, did not come into existence until April 5, 2009, almost six full months after the Plaintiff signed his copy of the contract bearing the fictitious (Florida) Compass Entertainment LLC name.

103.    Plaintiff contests the validity and enforceability of this agreement and seeks to have it annulled on the grounds that: a) it was entered into by means of fraudulent inducements, b) it relates to a non-existent entity, c) it was never properly executed, d) all terms of the contract were breached by the Defendants.

**AGREEMENT TO REORGANIZE SHAREHOLDINGS OF**

**ROUNDER ENTERPRISES, INC.**

104.     On or about October 27, 2008 Plaintiff Evert Caldwell was fraudulently induced
to enter into a contract with the Defendants relating to reorganization of Rounder
Enterprises, Inc.

105.     The "fraudulent inducements" used to deceive the Plaintiff, along with the actual
agreement provided by the Defendants, led Plaintiff to believe he was entering into
negotiations with COMPASS ENTERTAINMENT LLC, a successful Florida limited
liability company with its main place of business located at 3000 Universal Studios Plaza,
Building 17, Orlando, Florida 32819.

106.     No such entity has ever been a registered corporation in the State of Florida.

107.     Plaintiff has since learned that Defendant Compass Entertainment Group, LLC,
the entity now purporting to be a signatory to the agreement, did not come into existence
until April 5, 2009, almost six full months after the Plaintiff signed his copy.

108.     Defendants, through this fabricated non-entity, sought to gain control of 51% of
the Plaintiff's corporation's authorized shares.

109.     As part of the agreement, Defendants, through this fabricated entity, agreed to
produce and distribute (or cause to be so distributed) a television program based on and
designed to promote the brand, identity and marks of the Corporation.

110.     Defendants have failed to do so in a manner that benefits anyone but the
Defendants at the expense of the Plaintiff.

111.     The Defendants, through the non-existent Compass Entertainment LLC, agreed
also to "utilize its relationships within the gambling and hospitality industries to cultivate

for Rounder Magazine (a publication owned in its entirety by the Corporation) advertiser relationships designed to enhance the profitability of such magazine."

112.    After numerous discussions, Defendants also agreed that the magazine needed to, and would be, produced on a consistent basis, with a print publication distributed at least quarterly.

113.    Defendants have circulated press releases and a media kit that clearly state the magazine was being published, and would continue to be, on a consistent basis.

114.    Instead, despite existing contracts, Defendants have damaged ongoing relationships with casino advertisers by failing to publish the magazine as promised and, as a result, the established meaning of the Rounder "mark" no longer symbolizes the identity and quality it once did as, "magazines about poker, poker related entertainment, food and women, but not computer games nor television shows" and has become a fraud on the purchasing public.

115.    Defendants agreed that all parties would be bound be a due of loyalty and of good faith and fair dealing as to the manner in which they deal with one another for the benefit of the Corporation.

116.    Instead, Defendants have acted solely and deceptively for their own exclusive benefit, without consultation or consideration, to the detriment of the Plaintiff.

117.    The contested contract included the stipulation that "Any party may freely assign this Agreement in whole or in part to a third party subject only to the express assumption in writing each and every obligation of Licensee hereunder. Each party shall give the others written notice of any assignment."

118.    Despite this assurance, Plaintiff has never been notified that the non-existent Florida entity Compass Entertainment LLC, or its agents, has ever assigned these rights under the contract to any other party, inclusive of the Nevada entity defendant Compass Entertainment Group LLC.

119.     Plaintiff has also never received any financial statements, audited or otherwise, related to productions arising from this agreement despite the fact that the Defendants appear to have been enriched and continue to benefit from the unlawful use of the Plaintiff's Rounder marks.

120.     Plaintiff contests the validity and enforceability of this agreement and seeks to have it annulled on the grounds that: a) it was entered into by means of fraudulent inducements, b) it relates to a non-existent entity, c) it was never properly executed, d) all terms of the contract were breached by the Defendants.

## FAILURE TO PROPERLY EXECUTE ANY AGREEMENTS

121.     Despite having signed and delivered each and every one of the contested documents to the Defendants, the Plaintiff has never received countersigned documents confirming that these agreements were ever executed or otherwise enforceable, irrespective of their allegedly fraudulent nature.

122.     Plaintiff made numerous requests to the Defendants asking that they supply him with a copy of such documents bearing the signatures of both Greg McDonald and Tom McDonald or other authorized signatories for the purported Florida Corporation, COMPASS ENTERTAINMENT LLC and the Gregory J. McDonald registered Heritage Television Productions, Inc.

123.     Defendants have repeatedly delayed or otherwise refused to produce such documentation, at times claiming the documents were in storage and that their attorney (Defendant) Jeffrey P. Kranzdorf would take care of it.

124.     Plaintiff has since learned that Defendant Compass Entertainment Group, LLC, the entity now purporting to be a signatory to the agreement, did not come into existence until April 5, 2009, almost six full months after the Plaintiff signed his copy.

125.    In October 2008 the Plaintiff could not, and did not, enter into any legally valid or binding agreement with either the non-existent Compass Entertainment LLC or the not yet formed Defendant, Compass Entertainment Group, LLC.

126.    Plaintiff therefore contests the validity and enforceability of these agreements and seeks to have them annulled on the grounds that: a) they were entered into by means of fraudulent inducements, b) they relate to a non-existent entity, c) they were never properly executed, d) all terms of the contract were breached by the Defendants.

## MISAPPROPRIATION OF ROUNDERLIFE.COM WEBSITE
## AND ONGOING MISREPRESENTATIONS CONTAINED THEREON

127.    Even though only two issues of Rounder Magazine have been published since July 2009, the Defendants continue to utilize the Plaintiff's website as a promotional tool for their own benefit.

128.    The listing of purported production staff does not match the activities being performed and appears to be primarily a vanity-motivated display of nepotism and cronyism.

129.    Defendants list their positions with Rounder Enterprises Inc. on the Plaintiff's website as follows: Greg McDonald – Publisher/Editor in Chief; Suzanne LaBelle – Managing Editor; TELEVISION PRODUCTION Tom McDonald, Gregory McDonald, Jeffrey Kranzdorf, Suzanne LaBelle.

130.    Rio Estepe, the roommate and best friend of Suzanne (McDonald) Labelle, is also listed alongside Suzanne as a Managing Editor, despite either having any known publishing experience.

131.    Plaintiff alleges that, as event managers, both individuals (Rio and Suzanne) attended a promotional event at Caesars Atlantic City and allowed Rounder models to

pose publicly in a highly provocative and extremely disturbing photograph with a rotund, semi-naked man, all the while allowing the Rounder marks to be used as a backdrop.

132.     The lewd and visually repugnant activity displayed in the photograph clearly establishes the Defendants' lack of professional qualifications and reckless disregard for the Plaintiff's brand.

133.     While simultaneously purporting to be a producer of the Rounder Television show, and a representative of the non-existent Compass Entertainment with a Florida "Universal Studios" address, Tom McDonald did, on or about November 24, 2008, under false pretenses, seek to initiate and then process the transfer of Rounder websites from the Plaintiff to the Defendants under the GoDaddy domain registrar account # 24719165.

134.     Tom McDonald has also represented his business address as being that of Rounder Enterprises, Inc., 3000 Universal Studios Plaza, Bldg. 22, Orlando, FL 32819 despite his awareness that this entity was not registered with the Florida Department of State to transact business in Florida.

135.     On January 12, 2009 Tom McDonald undertook the senior administrative task of assigning telephone voice mail numbers to employees of Rounder Enterprises Inc. while using the signature "Tom McDonald, Rounder Enterprises, Inc., 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169, www.Rounderlife.com, T  877.821.2424 x706, C 321.229.2280, F 702.990.3501, Skype: T.M.Skype, tom@rounderlife.com." despite his awareness that this entity was not registered with the Nevada Secretary of State such that it might legally transact business in the State of Nevada.

136.     Defendants have also established and used a Bank of America checking account in the name of Rounder Enterprises Inc. with the same Las Vegas, Nevada address despite the fact that they did not register that South Carolina entity with the Nevada Secretary of State.

137.    Jeffrey P. Kranzdorf is listed as an employee under the heading of Legal Affairs, yet is not licensed to practice law in Nevada or Florida, only California and New York.

138.    In emails dated June 20, 2009 and August 10, 2009 which were sent to Plaintiff and Defendants Greg McDonald and Tom McDonald, Defendant Jeffrey Kranzdorf appears to clearly exceeds his normally protected role as counsel by submitting editorial comments, strategic marketing concerns and promotional suggestions related to the production of the magazine and website traffic enhancements.

139.    Further to this, in an email dated October 28, 2009 Defendant Kranzdorf creates, contributes to, or otherwise approves the following misrepresentations: "About Compass Entertainment... Compass Entertainment LLC is part of a growing trend of high end, sophisticated entertainment industry production juggernauts that in the past would have been based in L.A. or New York but chose Las Vegas as an accessible, business-friendly and bursting with talent (both in front of and behind the camera) home base.  The company's executive suite is staffed by industry veterans with long and successful track records in a wide variety of both traditional and newly emerging media and markets; including feature motion picture and television production, record production, distribution and marketing, made-for-home video production, personal management, advertising, talent agency and audio-video production facilities management.  Compass Entertainment is poised to bring Rounder to life on television screens around the globe and figures prominently in the development of its substantial presence on the Internet. The company currently has a number of feature film projects in development with and is partnered with billion-dollar producer Steve Waterman ("Stuart Little I and II", "The Alvin & The Chipmunks Movie", "Casper"...with Steven Spielberg) and its predecessors/affiliates have produced several hundreds of hours of television over the past several decades."

140.     Defendant Jeffrey Kranzdorf also appears to have participated in, and otherwise facilitated, the fraudulent transfer of Plaintiff's trademarks as evidenced by an email to Greg McDonald dated July 24, 2009 in which he questions the repercussions of filing "under penalty of perjury."

141.     Tampa lawyer, and Florida House of Representatives member, Kevin Ambler, is listed as General Counsel—despite leaving private practice for politics and being unlicensed to practice law in Nevada—while his son Jason Ambler has worked as a photographer for the magazine.

142.     Greg McDonald's long-time Orlando-based business associate, Robert Kling, is listed as Director of Southwest Operations.

143.     Due to the fact that the "corporate head office" is nothing more than a rented virtual office or mail drop, it is unlikely that any of these purported staff members actually provide a net benefit to the operation from on-site activities.

144.     Plaintiff is unaware of any activities undertaken by the Defendants that would require the expense or patronage of several questionably qualified regional Directors of Operations as listed.

145.     The Rounderlife.com website also contains the following notations related to purported ownership of the site content and trademarks: "Compass Entertainment, LLC. - © 2010 All Rights Reserved - Reproduction in whole or in part is prohibited without prior written consent from Rounder Enterprises Inc."

146.     Defendants promote Rounder Enterprises Inc. as being Native American owned and operated (Chickasaw), yet the Plaintiff is not a Native American.

147.     The website promotes, through a display of logo graphics, the U.S. Poker Championship, the World Series of Golf, Rounder Shotz Energy and Compass Entertainment Group.

148.    Nowhere on the website is any reference to the Plaintiff, or any indication that he is an owner, in whole or in part.

## FALSE PROMOTIONAL CLAIMS APPEARING IN COMPASS VIDEOS DISTRIBUTED WORLDWIDE ON ROUNDER WEBSITES

149.    On the Defendant-controlled websites, compassentertainment.com and rounderlife.com, Defendants present to the public several videos for viewing which, by their deceptive and fraudulent nature, diminish the Plaintiff's Rounder brand.

150.    For example, the videos include impressive high-quality film footage belonging to third parties that appear to be used by the Defendants for self-promotion in violation of copyright protection laws, despite their utilization of disclaimers claiming that permission for use has been granted by way of "courtesy".

151.    Promotional videos also state "Compass Entertainment, award winning pioneers in the business of music, feature film, and television for more than thirty years..." despite this being utterly impossible given the lifespan of Compass.

152.    The Defendants' promotional materials also contain the statement, "Following the 2008 acquisition of Rounder by Compass" which, as used, clearly misrepresents the limitations of 'control' given to the non-existent Compass Entertainment LLC, via the Rounder Enterprises Agreement to Reorganize Shares, as being the 100% ownership of Rounder Enterprises Inc. by Compass Entertainment Group LLC.

### World Series of Golf

153.    Defendant videos also associate the Rounder brand with The World Series of Golf; a Nevada corporation that appears to put out unsubstantiated press releases for events that never take place, such as the promised May 13 - May 17th 2010 promotional event at Prim Valley Golf Center in Las Vegas.

154.     WSOG appears, on the surface, to be operated for the primary purpose of attracting funds from investors while collecting a disproportionately high percentage of player's 'entry fees' at the tournaments they host.

155.     By example, in 2009, they reported $789,994 in player revenue in a $10,000 'entry fee' event with only 125 players, less those whose fees were waived "pursuant to various sponsorship or other agreements."

156.     The Defendants appear to be benefiting financially from their involvement in this entity, possibly through stock options granted as part of their agreement as listed in the WSOG SEC filings under signature of Greg McDonald on behalf of Compass.

157.     A Press Release issued by World Series of Golf, Inc. on November 5, 2009 includes the quote "We're pleased to help bring the World Series of Golf to new markets around the country through this new satellite program," said Compass Entertainment Chief Executive Officer Greg McDonald.

158.     This Nevada corporation, WSOG, which Defendants have entered into contractual obligations with using the Rounder name, appears to be in financial turmoil, is involved in litigation with at least one investor and, in the opinion of the Plaintiff, has submitted questionable documentation to the SEC, as well as to the general public in joint press releases and PowerPoint presentations such that it may continue to solicit investor funds.

159.     Plaintiff believes that the WSOG is subject to the Nevada Gaming Control Act and therefore require a gaming license in connection with the operation of their tournaments, something that they do not appear to have.

160.     After careful investigation, Plaintiff believes that any association with "The World Series of Golf" could potentially diminish the Rounder brand and otherwise put Plaintiff and Rounder Enterprises Inc. at risk.

**Rounder TV / Compass**

161.　　Defendants state, and otherwise promote themselves, in a video appearing on the ROUNDER website, that "Rounder Life is the first world wide poker driven casino lifestyle TV series hosted in multiple languages world wide."

162.　　Defendants also state "the Rounder Life TV series will offer our advertising partners vast exposure, on world wide broadcast television with a broad spectrum of additional media formats, including Rounder Magazine, the web, and live event advertising."

163.　　No evidence has been found by the Plaintiff to substantiate these unfounded statements for the two years the Defendants have been claiming to produce this International television show.

164.　　Defendants state in their promotional materials that the 'Rounder brand' is "the face of the poker reality lifestyle show, Rounder Life, and the tournament driven, Rounder Rumble, a three day satellite event combining the United States Poker Championship and World Series of Golf satellite competitions."

165.　　Plaintiff can find no substantiation to support the notion that the 'Rounder Life Reality Lifestyle Show' has ever aired, much less "on world-wide broadcast television," despite such claims having being made on the 'Compass' website, the 'Rounder' website, and elsewhere, for over two years.

166.　　Plaintiff can also find no substantiation to support the claim that the 'Rounder Rumble', described in the Defendants' video as "a three day satellite event combining the United States Poker Championship and World Series of Golf satellite competitions", has ever taken place, despite the conveyed impression that events have and continue to take place.

**Rounder Shotz Energy Drink**

167.    Defendants continue to make the claim that the Rounder brand "has exploded, with Rounder Shotz Energy Drink, virtual Rounder Magazine, as well as free and subscription based on-line gaming" in videos and advertisements.

168.    Plaintiff has been unable to locate a single distribution point for the 'Rounder Shotz Energy Drink', despite the misleading terminology being used suggesting expansive availability.

169.    A 'commercial' appearing in the 2009 USPC video stating "Rounder Shotz Energy Drink is now available in finer poker rooms everywhere" is another misleading consumer claim issued by the Defendants.

170.    In addition to performing availability searches, Plaintiff has determined from the headquarters of SHOTZ that, other than a limited supply of co-branded cases supplied as promotional giveaways for the 2009 USPC, the drink is not being produced on behalf of the Defendants.

**Rounder Magazine**

171.    Defendants falsely imply that they are responsible for the creation of a virtual or online version of Rounder Magazine.

172.    Since the 'Virtual Rounder Magazine' was already in existence at the time the Defendants fraudulently assumed control, their insinuation that Compass' 'acquisition' had anything to do with the implementation of a virtual magazine is false.

173.    Defendants have, in fact, failed to produce the printed Rounder magazine on a regular basis as contractually obligated to do (with only two printed, or virtual, issues distributed since July 2009), yet continue to claim that the magazine is being produced.

174.   Defendants continued to promote the sale of advertising within the Rounder magazine until at least November 2010 through the use of a "media kit" which lists various prices based on size and location of the ad.

175.   The media kit specifies that the magazine is published on a quarterly basis and that "The magazine is distributed to casinos throughout the United States. It is also sold on magazine shelves in stores located throughout the country."

176.   The issue Defendants elected to print (Q1 2010) did not have any of the standard articles relating to the NFL, College football, the PGA, Nascar, MLB or even the familiar World Poker Tour, World Series of Poker, or Rounder of the Year sections.

177.   Defendants instead opted to publish "self-promoting," "self-aggrandizing" or otherwise fictional articles relating to the Rounder Mega-Yacht, the World Series of Golf, the RounderLife Reality TV Series, and Greg McDonald's purported "accomplishments" and musical acts under his personal control or management, none of which benefited anyone but the Defendants.

178.   The Defendants have also inserted a printed advertisement promoting the movie DEAL, which starred Burt Reynolds, into several issues of Rounder Magazine.

179.   Plaintiff has since learned that the ad appears to have been altered from the original DEAL movie poster from 2008 such that it now includes the Rounder logo and Greg McDonald's name as an Executive Producer.

**RounderClub Online Gambling**

180.   Defendants promote on the Rounderlife website the ability to play online poker and win prizes through their branded RounderClub.

181.   Defendants claim that Rounder has had two million players utilize its poker site and will soon be able to play on Facebook.

182. Website visitors wishing to participate in the online game are simply redirected to a third party site for affiliates of the zengamingnetwork.com based "National League of Poker".

183. This indicates that the Defendants, while claiming to have control of an online gaming platform, have no such infrastructure, expertise or investment in any online gaming process beyond the use of a single hyperlink to someone who does.

184. By exaggerating their own personal control and knowledge of the online gaming industry, and the significance of the RounderClub to the corporate financial stability of themselves and associates, Defendants misrepresent the Rounder brand to the public on the website and to investors in Rounder, Inc. and in the World Series of Golf promotional video.

**Rounder Mega Yacht**

185. On the Rounderlife website the Defendants promote a "High Seas Poker" TV Show with the caption "Register in the RounderClub for your chance to play Celebrities and Poker Pros on the ROUNDER MEGA YACHT for the HIGH SEAS POKER TV SHOW and win a seat in the 2011 US POKER CHAMPIONSHIP at the Trump Taj Mahal in Atlantic City."

186. This purported event is captioned with an image of a yacht emblazoned with what appears to be the Rounder logo (large red R) along with an image of stacked gold bricks.

187. Defendants have also featured the ROUNDER MEGA YACHT in the 2010 Q1 issue of Rounder (pg 50, 51) as being "made exclusively available for the use of Rounder casino clients around the world for the accommodation and entertainment of their very special VIP clients". (http://issuu.com/rounder-magazine/docs/1001-qrtr1)

188. Plaintiff has since learned that the yacht image has been doctored, in that the original, all but identical, photo does not contain the Rounder logo.

189.     Plaintiff has since learned that the yacht in question is named R Rendezvous and is owned, directly or indirectly, by one Robert R. Krilich Sr. through his wholly owned Rainbow Air Corp. and not any of the Defendants.

190.     Plaintiff has also determined that its owner is currently marketing the yacht in question for sale through Merle Wood & Associates Inc.

191.     Plaintiff also notes that the interior pictures purporting to be from the Rounder Mega Yacht do not correspond with current sales promotional photos.

192.     Plaintiff is aware that Defendant Greg McDonald met with Robert R. Krilich Sr. on at least one occasion, in or around July 2009, to discuss holding the Rounder TV show on the Krilich owned/affiliated Palm Beach Princess gambling cruise ship.

193.     Plaintiff has since determined that the former gambling cruise ship is not viable or available, nor is the much smaller R Rendezvous, for the purposes described by the Defendants in the 2010 Q1 issue of Rounder Magazine.

194.     Plaintiff has since learned that Robert R. Krilich Sr. has spent nine years in prison for racketeering offences related to bribing public officials. Reports also indicate that he has been charged with fixing a "hole-in-one" golfing contest.

195.     Plaintiff has been unable to verify the Defendants' claim, which was displayed online between February 24th to April 21st, 2011, that the "National League of Poker," as used by the Defendants in determining prize winners, has ever offered to its, or RounderClub players, "a chance to play Celebrities and Poker Pros on the ROUNDER MEGA YACHT for the HIGH SEAS POKER TV SHOW and win a seat in the 2011 US POKER CHAMPIONSHIP at the Trump Taj Mahal in Atlantic City."


**Heritage Entertainment / Heritage Report**

196.     A video appearing on the Defendants' compassentertainment.com website states "Heritage Report is a television series aimed at the sophisticated viewer..."

197.    It also states, "We'll travel to the prestigious Monaco Yacht Show to cover the most luxurious and largest yachts ever built, and meet the builders and owners of these gigantic marvels..."

198.    It notes that "For more information contact Heritage Entertainment at (407) 224-3904 or go to our website at www.heritage-entertainment.net"

199.    Plaintiff can find no evidence to suggest that this show ever aired, as claimed, or was more than a promotional concept.

200.    Plaintiff has since learned that Heritage Entertainment, Inc. is a defunct California corporation that belonged to Gregory T. McDonald; used his personal residential address in Florida; and was sued in November 2007, along with McDonald, by the Pearlman bankruptcy trustee for allegedly receiving fraudulent transfers. (Case 6:07-ap-00179 UNITED STATES BANKRUPTCY COURT, MIDDLE DISTRICT OF FLORIDA (ORLANDO DIVISION) re: Case No. 6:07-bk-00761-ABB)

201.    Plaintiff has also learned that the similarly named Heritage Entertainment, LLC. is a defunct Florida registration entry for the California corporation Heritage Entertainment, Inc, belonging to Greg T. McDonald (Greg Sr.), which shared the same Church St. address as other Pearlman/McDonald/Kranzdorf enterprises before moving to 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819 around the time of Pearlman's arrest.

202.    Plaintiff has since learned that Heritage Television Productions, Inc. is a defunct Florida corporation registered to Defendant Gregory J. McDonald (Gregory Jr.), which appears to have operated for less than two years at 3000 Universal Studios Plaza, Building 17, Orlando, Florida 32819, dissolving shortly after negotiations with the Plaintiff took place.

203.    Plaintiff alleges that the Defendants deliberately misrepresented the troubled and now-defunct Heritage Entertainment LLC as being the legally non-existent Compass

Entertainment LLC in order to defraud the Plaintiff, consumers and investors, and that they continue to do so to the present day.

**Luxury Connection**

204.     Defendants claim that "The Luxury Connection is a television show providing international exposure on television networks around the world" and that "The Luxury Connection will be broadcast in multiple languages, by means of a select variety of satellite and cable television services, to precisely targeted demographics world wide, including the emerging markets in Eastern Europe, Southeastern Asia and Latin America."

205.     Plaintiff can find no evidence to suggest that this show has ever aired; much less "around the world and in multiple languages," or that it was produced by Compass.

**National Television Coverage**

206.     In numerous press releases and in an article appearing in the Defendant-operated Rounder magazine, Defendants implicitly state that one of their productions related to the U.S. Poker Championship would air nationally on both the SPIKE TV and COMEDY CENTRAL television networks.

207.     In the Defendant-issued USPC PRODUCTION AGREEMENT it states at paragraph 3.8 that "Producer hereby guarantees to TTMA that each of the Programs hereunder (and the Optional Programs) will, at a minimum, be aired nationally across the United States of America via terrestrial, satellite and/or cable television."

208.     Plaintiff has been unable to verify transmission of the event beyond that of a purported, but unverified, airing on a local cable station in Florida.

209.     Further, Defendants made the unprofessional decision of hiring long-time associate Arthur Bergel to produce the 2009 USPC despite his having no prior poker experience.

210.     This led to embarrassing situations such as a three-hour delay to the start of the PLO Championship Event, and Bergel's yelling of the word 'CUT' during final table action, as if he were producing a scripted movie.

211.     Defendants also jeopardized the integrity of the production by negotiating product endorsement deals with certain final table players.

212.     Defendants also displayed their lack of understanding of poker production etiquette and legal responsibilities by suggesting to Trump Taj Mahal management that the financial 'backer' of a final table player be allowed in the 'hole card' viewing area, to analyze real-time hands as part of the production.

**FAILURE TO PERFORM CORPORATE DUTIES**

213.     Even assuming that the Compass entity was entitled to obtain a majority control of Rounder Enterprises, Inc., the Defendants have endangered and devalued the entity in that they have failed to accurately reflect their ownership or association in the South Carolina Department of State Corporations database, failed to hold regular meetings, failed to file tax returns, failed to produce minutes and otherwise failed to perform any duties normally required of a corporation.

214.     Defendants have also failed to issue to Plaintiff a share certificate representing his ongoing interest in the newly formed Rounder Enterprises, Inc., failed to notify him of any corporate meetings, and failed to provide him with any documentation related to the operation of the corporation.

215.     Most egregious of all, the Defendants have, through their negligence and fraudulent conduct, caused the South Carolina Secretary of State to revoke the corporate

1   status of Rounder Enterprises Inc on June 23, 2011, by way of forfeiture and

2   administrative dissolution.

**UNAUTHORIZED REGISTRATION/TRANSFER OF ROUNDER TRADEMARKS**

216.     Plaintiff alleges that the Defendants have, without legal right or consent of the
Plaintiff, yet with the knowing assistance of their in-house counsel, illegally registered
and/or transferred ownership of trademarks belonging to the Plaintiff.

217.     Plaintiff alleges that he has never authorized the registration or transfer of any
Rounder marks to anyone other than Rounder Enterprises Inc., as rightful owner.

218.     This contention is fully supported by the contested trademark agreements which
have the stipulation that the "Owner hereby grants to the Licensee the exclusive right to
pursue on Owner's behalf, the registration of the Mark with the USPTO in order to
perfect such registration in Owner's name and for the benefit of Owner.  In this regard,
Owner exclusively grants to Licensee the right to pursue such registration in a manner
calculated to preserve Owner's rights and title in and to the Mark and to protect
Licensee's exclusive rights to the uses of the Mark set forth herein."

219.     The contested agreements further state that "The Licensee shall not during the
Term of this Agreement or at any future time seek to register or use the Trade mark in its
own name" and that "The Licensee recognizes the Owner's title to the Mark and shall not
claim any right title or interest in the Mark or any part of it save for the exclusive use as
is granted by this Agreement, at any time."

220.     Defendant Jeffrey P. Kranzdorf, the author of the contested agreements, appears
as the attorney of record for several Rounder related trademark applications and transfers
on behalf of Compass Entertainment that occurred without notification to, or the consent
of the rightful owner, the Plaintiff.

221.    On October 18, 2007, the Plaintiff, in the name of Rounder Magazines LLC, an Alabama Limited Liability Company, filed a U.S. federal trademark registration for "ROUNDER".

222.    On October 29, 2007, the Plaintiff, in the name of Rounder Magazines LLC, assigned the entire interest of the mark to Rounder Enterprises Inc., a South Carolina Corporation.

223.    On November 3, 2010, Tom McDonald, purporting to represent himself to the United States Patent and Trademark Office as the correspondent for Rounder Enterprises Inc, fraudulently conveyed the entire interest of the mark "Rounder", serial number 77307292 over to Compass Entertainment Group LLC without consultation or approval of the Plaintiff.

224.    On November 27, 2007, the Plaintiff, in the name of Rounder Enterprises, Inc., filed a U.S. federal trademark registration for "R".

225.    On November 3, 2010, Tom McDonald, purporting to represent himself to the United States Patent and Trademark Office as the correspondent for Rounder Enterprises Inc, fraudulently conveyed the entire interest of the mark "R", serial number 77337358 over to Compass Entertainment Group LLC without consultation or approval of the Plaintiff.

226.    On October 14, 2008 an application for the Word Mark "ROUNDER LIFE TV" was filed with the USPTO by Attorney of Record, Jeffrey P. Kranzdorf, on behalf of the fabricated Compass Entertainment Group LLC, Building 17, 3000 Universal Studios Plaza, Orlando, FL 32819. The application appears to have been abandoned in favor of a new graphic design.

227.    Then, on June 10, 2010, a second U.S. federal trademark registration was filed for "ROUNDER LIFE TV". This owner of this trademark, serial number 85059766, is currently listed as Compass Entertainment Group LLC, Las Vegas, NV 89169.

228.     On March 27, 2009, a U.S. federal trademark registration was filed for "ROUNDER CLUB". The owner of this trademark was listed as Compass Entertainment Group LLC, Las Vegas, NV 89169. The application appears to have been abandoned in favor of a new graphic design.

229.     Then, on June 10, 2010, a second U.S. federal trademark registration was filed for "ROUNDER CLUB". This owner of this trademark, serial number 85060089, is currently listed as Compass Entertainment Group LLC, Las Vegas, NV 89169.

230.     On March 26, 2009, a U.S. federal trademark registration was filed for ROUNDER ENERGY DRINK. The owner of this trademark, serial number 77699479, is listed as Compass Entertainment Group LLC, Las Vegas, NV 89169. The current status of this trademark filing is ABANDONED - NO STATEMENT OF USE FILED. The application appears to have been abandoned in favor of a new graphic design.

231.     On June 10, 2010, a related U.S. federal trademark registration was filed for "ROUNDER SHOTZ ENERGY". The owner of this trademark, serial number 85059869, is listed as Compass Entertainment Group LLC, Suite 500, 3960 Howard Hughes Pkwy, Las Vegas, NV 89169.

232.     On April 22, 2009, a U.S. federal trademark registration was filed for "ROUNDER POKER ROOM". The owner of this trademark, serial number 77720152, was listed as Compass Entertainment Group LLC, Las Vegas, NV 89169. The application appears to have been abandoned.

233.     On March 26, 2009, a U.S. federal trademark registration was filed for "ROUNDER POKER CLUB". The owner of this trademark, serial number 77699495, was listed as Compass Entertainment Group LLC, Las Vegas, NV 89169. The application appears to have been abandoned.

234.    Plaintiff has never entered into any agreement with the Defendants which would authorize any one of them to register any of the Rounder trademarks in their names, or any other.

## CONTRACTS AND AGREEMENTS WITH OTHER PARTIES

235.    Defendants entered into numerous financially beneficial agreements with third parties such as the United States Poker Championship, World Series of Golf, National League of Poker, John Stanton, Donald Baruch and others, whereby these potential revenue and stock promotion deals should have been entered into for the benefit of Rounder Enterprises Inc. and the Plaintiff, not exclusively the Defendants.

### United States Poker Championship

236.    Using the Compass name, and not that of Rounder Enterprises Inc., defendants entered into a multi-year production agreement with Trump Taj Mahal to film and televise the United States Poker Championship.

237.    Plaintiff was falsely led to believe that he had entered into a related agreement with Compass that would benefit both parties, should any such "Rounder-related" deals be entered into.

238.    Instead, Defendants wrongfully claim ownership and rights to the benefits arising from any and all contracts between Compass Entertainment Group LLC and Trump Taj Mahal Associates relating to the filming of the United States Poker Championship.

### World Series of Golf, Inc.

239.    The SEC filings of WSOG reference a document number 10.17 as being the "Compass Agreement, effective as of October 30, 2009, by and between World Series of Golf, Inc. and Compass Entertainment LLC, incorporated by reference to Exhibit 10.1 to

of our Current Report on Form 8-K filed with the Securities and Exchange Commission on November 5, 2009."

240.    Their filing Exhibit 99.1 includes reference to the statement ""We're pleased to help bring the World Series of Golf to new markets around the country through this new satellite program," said Compass Entertainment Chief Executive Officer Greg McDonald."

241.    It further states: "Compass, a diversified entertainment production and packaging concern also produces unrelated events and television programs for Donald Trump's United States Poker Championship, culminating with the USPC finals at the Trump Taj Mahal in Atlantic City, New Jersey scheduled for Nov. 20, 2009. Its related concern Rounder Enterprises, Inc. publishes Rounder Life Magazine, found on-line (www.rounderlife.com), in casino poker rooms and book stores around the United States. Rounder and Compass are headed by longtime entertainment industry executive McDonald, whose past affiliations include a long-term association with Elvis Presley and Colonel Tom Parker. McDonald also managed singer Rick Nelson during a lengthy career producing live concerts, television programs and motion pictures, including the poker-themed "Deal" starring Burt Reynolds, for which McDonald served as an executive producer."

242.    Prior filings also state "On October 30, 2009, we (WSOG) entered into a letter agreement (the "Compass Agreement") with Compass Entertainment LLC, a diversified entertainment production company based in Las Vegas, Nevada ("Compass"). Pursuant to the Compass Agreement, we granted to Compass an exclusive, worldwide license to produce and distribute the television content we generate from our annual World Series of Golf amateur golf tournament and from a series of live regional or "satellite" amateur golf tournaments that Compass will organize, promote and produce on our behalf."

243.    The agreement falsely notes that Compass Entertainment LLC is a diversified entertainment production company based in Las Vegas, Nevada when, in fact, the only Compass Entertainment entity legally registered in Nevada is the Defendant Compass Entertainment Group, LLC.

244.    On September 9, 2010, World Series of Golf Inc, announcing a Letter of Intent to acquire Rounder Magazine, issued a press release.

245.    Included within the press release was the statement that "The Casino Lifestyle Magazine launched in December 2006, is a gaming lifestyle magazine distributed to casinos throughout the United States. It is also available by subscription and sold in various bookstores throughout the country."

246.    A Webcast directed to investors of World Series of Golf Inc. (WSGF.PK), in which CEO Patrick Brown announced the intention to acquire Rounder Magazine, preceded this release on August 27, 2010.

247.    At no time did the Defendants inform the Plaintiff of the agreement, its terms, or the press release containing the fraudulent misrepresentations related to distribution, subscription and bookstore availability of Rounder Magazine.

248.    Plaintiff refutes the notion that the Defendants had any right to utilize or otherwise sell the Plaintiff's interest in Rounder Magazine to World Series of Golf, Inc. without his approval or right to be properly compensated.

249.    For some reason there is no reference made to any agreement regarding Rounder Magazine in the SEC 10-k filings of WSOG dated April 12, 2011, despite the promotional video and press releases geared to the investors of WSOG stock suggesting there was such an agreement that might affect the value of WSOG stock.

**John Stanton / Donald Baruch / Penny Stock Promotion**

250.    In what appears to be the unauthorized sale of Plaintiff assets in the Rounder

brand, Defendant Greg McDonald, along with one Donald Baruch of Florida, formed a

Florida limited liability corporation by the name of Rounder Inc. on April 26, 2011.

251.    The listed purpose of the corporation, Document Number P11000040373, was

"gaming and lifestyle media organization."

252.    Listed on the Florida Department of State records as officers were Donald Baruch

(President) and Gregory McDonald (Director); both with the address of 2409 North

Falkenburg Road, Tampa, FL, 33619.

253.    That particular address is shared with businesses associated with John Stanton, an

associate of both Donald Baruch and Sam Ballinger, the owner of Makes and Models

Magazine as referenced above in "Fraudulent Inducements".

254.    Greg McDonald resigned as Officer and Director on October 13, 2011 after which

John Stanton became CEO and the company changed its name to Molecular Resilience

Inc on November 22, 2011

255.    Then the assets of this entity related to the Rounder brand were immediately

transferred from the original Rounder Inc (Document Number P11000040373) to Spur

Ranch, Inc (Document number P04000023649) which was then renamed Rounder, Inc on

November 28, 2011.

256.    This was to facilitate the ability to offer to the general public Common Stock

currently trading as RNDR on Pink OTC Markets (CUSIP Number 77926V100).

257.    John D. Stanton, registered agent and CEO, has authorized press releases and

submissions to the Security and Exchange Commission stating that this entity now

controls the Rounder assets via the Defendant Rounder, Inc.

258.    The Initial Disclosure Statement of Rounder, Inc dated January 31, 2011 states

that the Defendant Compass Entertainment Group LLC, whose management consists of

Don Baruch and Greg McDonald (beneficial owner), holds 51.965% of the outstanding common stock, and that neither person is a member of Rounder Inc. management or a director.

259.     Donald Baruch was made President and CEO of Defendant Rounder, Inc on February 7, 2012 and Gregory T. McDonald was made a director on February 23, 2012.

260.     The Nevada Secretary of State database continues to list only Tom McDonald and Suzanne Labelle as the officers of Compass Entertainment Group LLC.

261.     Plaintiff believes that these Defendant entities are being used to induce investors to provide funds to the Defendants and other parties using many of the same fraudulent statements referred to herein, such that they might profit from the use of the Plaintiff's trademarked brand.

262.     Plaintiff had no prior knowledge of this transfer of Rounder assets, nor has he given approval for such, and therefore alleges that such assets and goodwill have been fraudulently transferred or otherwise conveyed by the Defendants, to the detriment of the Plaintiff, without consultation or compensation.

## CRIMINAL ASSOCIATES

263.     Plaintiff has since learned that Greg McDonald was a long-time business associate of Louis J. Pearlman. Lou Pearlman was convicted of bank fraud in 2007 related to a $300 million Ponzi scheme and sentenced to 25 years in jail.

264.     Plaintiff has since learned that Greg McDonald has maintained in his employ an individual named Richard Carl Jans for several years. Richard Jans is a disbarred attorney who was convicted of Grand Theft.

265.     Plaintiff has since learned that Greg McDonald was a long-time business associate of Ayman A. El-Difrawi. Alec Difrawi is a twice-convicted criminal who was imprisoned for Bank Fraud related to consumer fraud activities.

266. Plaintiff has since learned that Greg McDonald was a long-time business associate of Robert Fischetti. Mr. Fischetti was recently convicted for conspiracy and failure to file tax returns related to his facilitation of Lou Pearlman's Ponzi scheme.

267. Plaintiff has since learned that Greg McDonald was a long-time business associate of Cortes Randell. Cort Randell has been convicted of securities and mail fraud.

268. Plaintiff has since learned that Greg McDonald has been a business associate of Robert R. Krilich Sr. related to the purported use of Mr. Krilich's yacht for on-board Rounder-sponsored United States Poker Championship satellite events.

269. Mr. Krilich has spent nine years in prison for bribing public officials. He was also charged with fixing a hole-in-one contest.

270. Plaintiff believes that these criminal associations would prevent or otherwise deter the Defendant Greg T. McDonald from submitting his name for approval on a State of New Jersey Casino Control Commission Enterprise License Bureau Junket Enterprise Registration Form despite his operational control of Defendant Compass Entertainment Group LLC and Rounder Enterprises, Inc.

271. Plaintiff believes that the licensing of Defendant Greg T. McDonald was a warranted legal requirement due to his direct dealings with the casino licensee, Trump Taj Mahal, and in particular, as it pertains to his personal overseeing of the real-time production of the 2009 USPC at the Trump Taj Mahal, including his unrestricted access to the 'hole cards' during 'final table' filming.

272. Plaintiff alleges that Defendant Greg McDonald withheld information regarding the extent of the Defendants' association with these individuals and the businesses they were involved in together, and that had he been aware of this information, the Plaintiff would not have entered into any business transaction with the Defendants.

**FALSIFICATION OF JUNKET LICENSE**

273.    On November 1, 2009 Defendants caused to be delivered to the State of New Jersey Casino Control Commission Enterprise License Bureau a completed Junket Enterprise Registration Form.

274.    The Junket License was filed on behalf of the Nevada-entity Defendant Compass Entertainment Group LLC.

275.    The form required that it list "all" parties involved in the conduct of the applicant's business.

276.    Only the names of Tom McDonald and Suzanne Labelle appear on the form.

277.    The telephone numbers listed for Tom McDonald and Suzanne Labelle (321-229-2280 and 321-229-2283) have, at one time, been registered as belonging to Heritage Entertainment Inc, a defunct California entity which shared the personal residential address of Greg McDonald.

278.    The Defendants failed to list the names of Greg T. McDonald, Gregory J. McDonald or the Plaintiff Evert Caldwell, despite each of these parties having direct dealings with the Casino licensee and, more specifically, that Greg McDonald was not only identifying himself as the Chief Executive Officer of Compass Entertainment LLC of Nevada in a November 5, 2009 press release by World Series of Golf, Inc. but that he entered into an agreement with that entity with signing authority on October 30, 2009 using the email address of greg@rounderlife.com, the same one he used as Editor of Rounder Magazine.

279.    Greg McDonald has also identified himself as being a "founder" and "key staff" member of Compass due to the fact that he is the only person who could possibly take credit for all of the purported Compass accomplishments listed in promotional materials.

280.    Tom McDonald affixed his signature below the disclaimer "I CERTIFY THAT (TO THE BEST OF MY KNOWLEDGE) THE INFORMATION CONTAINED

HEREIN IS ACCURATE AND COMPLETE. I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE WILLFULLY FALSE, I AM SUBJECT TO PUNISHMENT.

281.     The Plaintiff believes that the form, as completed and submitted by the Defendants under Article 9, 5:12-92 of the New Jersey Casino Control Act, is in violation of Article 9, 5:12-117 of the Act.

282.     The Plaintiff further believes and alleges that the omission of his own name from the Junket Registration Form, despite his direct dealings with the Casino Licensee, including such things as contract negotiations, tournament scheduling, structure, and production of the USPC, the actions thereof which do require the Plaintiff be listed as directed in the bylaws of the New Jersey Casino Control Act, is part of the Defendants' scheme to keep the Plaintiff's name off 'Compass' documents, in an effort to defraud the Plaintiff and prevent him from receiving his rightful percentage of any revenue received by 'COMPASS', including advertising and 'entry-fee' revenue generated through the USPC PRODUCTION AGREEMENT FOR TAJ MAHAL TOURNEY, through 2024.

283.     Plaintiff further believes that Defendant Tom McDonald's willful failure to submit the names of all persons required to be included on the Junket Enterprise Registration Form is a serious legal infraction that diminishes the Rounder brand and otherwise puts Plaintiff and his company at personal risk of statutory penalties.

**DEPLETION OF BRAND VALUE**

284.     On or about February 1, 2008, Greg McDonald produced for the Plaintiff a bank statement indicating that he had over $1 million in assets on deposit, while further indicating that he possessed control of several other high balance accounts.

285.    This demonstration was made in response to the fact that the Defendants had recently bounced a check payable to Boyd Brothers Printing of Florida related to the printing costs of the magazine.

286.    Upon information and belief, in addition to Defendants' failure to pay printing bills, they have routinely and consistently failed to pay employees, writers, sales agents, camera operators, and others who have dutifully and contractually provided services to Rounder Enterprises Inc after the Defendants assumed control in October 2008.

287.    Plaintiff believes that the Defendants' failure to pay employees, contracted labor, and service providers is a serious legal infraction that diminishes the Rounder brand and otherwise puts Plaintiff and his company at personal risk of statutory penalties and civil litigation.

288.    Further, by portraying Rounder as the 'Presenter' of the USPC and not airing the show in a timely manner, if at all—as well as by overexposing and misrepresenting the Rounder brand throughout the event—the Defendants endangered the financial potential of Rounder by damaging its credibility and diminishing it's neutral media image in the eyes of other potential casino venues and advertisers.

289.    Defendants, in defiance of the wishes of Trump Taj Mahal management, elected to promote and promise an airing of the televised USPC on the Comedy Network, rather than a more suitable and symbiotic one.

290.    Trump Taj Mahal Associates LLC has since terminated its USPC PRODUCTION AGREEMENT FOR TAJ MAHAL TOURNEY as a result of these and other factors.

**Boomer Foundation Charity**

291.    An official Trump Taj Mahal press release dated November 2, 2009 stated: "For those players seeking a little extra excitement during the 2009 U.S.P.C. there will also be several special events, including a charity, celebrity golf tournament. The 1st Annual

Boomer Esiason Foundation Cystic Fibrosis Fall Classic, will be held on Saturday, November 14, at 10:00 a.m."

292.     Upon information and belief, the press release was issued after Defendants promised to organize and host this charity golf event using the Rounder brand such that it would purport to benefit the 'Boomer Esiason Foundation'.

293.     Despite the announcement, Plaintiff can find no documentation to verify that the event ever took place, or that the Defendants fulfilled their promotional promises, despite the fact they continue to advertise their association with the charity, along with Rounder, as if they did.

**Colonel Tom Parker Video**

294.     The Plaintiff's Rounder brand is further diminished when it appears in connection with a promotional video, mendaciously titled "The Truth", in which the Defendants attempt to paint the late Colonel Tom Parker (Elvis Manager) in a positive light.

295.     Apart from on the Compass website, reference to Rounder and this video being affiliated appears in a World Series of Golf Inc. business plan geared to investors dated August 27th, 2010.

296.     This revisionist tale attempts to rewrite history in favor of Greg McDonald's mentor, despite long-established and documented facts to the contrary, which include a Memphis probate judge's declaration in 1980 that Parker was guilty of mismanaging Elvis's career and defrauding the star and his estate out of millions of dollars.

297.     After reading a 300-page commissioned report, Judge Joseph Evan charged Parker with "self-dealing and overreaching" and with violating "his duty both to Elvis ... and to the estate" and ordered the co-executors of Elvis Presley's estate to file suit against Parker for "fraudulent business practices."

298.    Upon information and belief, Greg T. McDonald is a member of the secretive society known as the "Snowmen's League of America", an organization created by Colonel Tom Parker which appears to be dedicated solely to promoting the use of deception in business transactions, favoring members —such as Lou Pearlman—who possess such skills over the unfortunate and trusting person who ends up getting "snowed".

299.    Plaintiff alleges that Defendant Greg McDonald has withheld or falsified information regarding this individual, and the businesses and organizations they were involved in together, and that had he been aware of this information, the Plaintiff would not have entered into any business transaction with the Defendants.

300.    Plaintiff alleges that any association to Elvis Presley's deceptive manager Colonel Tom Parker, via the Defendants, is a detriment to the Rounder brand.

## COUNT I – COMMON LAW FRAUD

### (Against all Defendants)

301.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

302.    Defendants entered into a scheme whereby they intentionally agreed to defraud Plaintiff in order to induce him into ceding control of the Rounder marks, website and related company which they would later pillage and benefit exclusively from.

303.    Pursuant to that scheme, Defendants knowingly and with fraudulent intent, with the knowledge, approval, assistance and acquiescence of the other Defendants, and with reckless indifference to the truth, made fraudulent misrepresentations to the Plaintiff regarding their expertise, corporate standing, and by other promises and representations which were fraudulent, and/or part of the criminal and/or illegal enterprise and/or acts.

304.    In reliance upon their false and fraudulent misrepresentations, Plaintiff was induced to sign over to the Defendants the authority to act on his behalf to their purported mutual benefit.

305.    As a direct result of the fraudulent enterprise and based on the fraudulent misrepresentations, after Plaintiff signed the agreements in justifiable reliance upon the representations, operational control was entrusted to the Defendants after which trademarks were pilfered and the Plaintiff's property was wrongfully misappropriated.

306.    By reason of the aforementioned fraudulent and/or misleading statements and the Plaintiff's reliance upon them, Plaintiff (i) sustained damages in his business and/or property, and (ii) suffered physical, emotional and other damages.

307.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT II - FRAUDULENT INDUCEMENT /CONCEALMENT

(Against all Defendants except Rounder, Inc)

308.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

309.    Defendants entered into a scheme whereby they fraudulently induced Plaintiff to enter into a contract with them.

310.    Plaintiff had a right to justifiably rely on the truth of the Defendants' factual representations in a situation where intentional lies would result in loss to the Plaintiff.

311.    Under the terms of the contract, Defendants were to (at no cost or expense to the Existing Shareholders) produce and distribute (or cause to be so distributed) a television

program based on and designed to promote the brand, identity and marks of the Corporation; utilize their relationships within the gambling and hospitality industries to cultivate for Rounder Magazine (a publication owned in its entirety by the Corporation) advertiser relationships (i.e. Full Tilt, et. al.) designed to enhance the profitability of such magazine.; execute such other and further documents, instruments of conveyance, make such filings and do all such things as may be reasonable, necessary and convenience to effectuate the terms hereof; be bound be a due of loyalty and of good faith and fair dealing as to the manner in which they deal with one another for the benefit of the Corporation; freely assign this Agreement in whole or in part to a third party subject only to the express assumption in writing each and every obligation of Licensee hereunder and each party shall give the others written notice of any assignment.

312.     Defendants breached the terms of the contract by failing to perform such listed acts and did never intend to perform such acts.

313.     Defendants fraudulently induced Caldwell, through both affirmative misrepresentations and material nondisclosures, to enter into two merger agreement contracts by:

    a.  giving false attribution of past accomplishments to non-existent entity Compass Entertainment;

    b.  giving false attribution of success to Defendants, or entities under their control, when ventures generally failed, were embroiled in litigation, had no known connection to the Defendant, or were deemed to be fraudulent in nature;

    c.  their failure to inform Plaintiff of Defendants' association with criminal element;

    d.  falsely claiming ownership of entities which either do not exist or which have no official record to confirm such ownership or affiliation;

    e.  entering into contractual relationships with the Plaintiff using a non-existent corporate entity.

314.    Defendants had a duty to be complete and properly disclose material facts since they possessed superior knowledge, not readily available to the Plaintiff, knowing that he was acting on the basis of this mistaken information.

315.    By reason of the aforementioned fraudulent inducement and concealment, Plaintiff (i) sustained damages in his business and/or property, and (ii) suffered physical, emotional and other damages.

316.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## <u>COUNT III – MISREPRESENTATION</u>

(Against all Defendants)

317.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

318.    The Defendants deliberately, and with full knowledge of the dishonesty of their factual statements, made fraudulently material misrepresentations to the Plaintiff in order to induce him into signing a contract with them.

319.    Defendants knowingly, willfully and unlawfully did conspire, agree and/or combine together with each other to associate with, conduct, participate in and further the affairs of The Fraudulent Enterprise through a pattern of making knowingly false and/or misleading statements which were designed to induce Plaintiff to enter into contractual relations with them.

320.    The aforesaid fraudulent and/or misleading statements included, but were not limited to representations and promises made by the Defendants and by other promises

and representations which were fraudulent, and/or part of the criminal and/or illegal enterprise and/or acts.

321.     Some of the many past and ongoing misrepresentations include:

a.  listing business addresses that do not represent those of legally registered entities;

b.  drafting and presenting contractual agreements with knowledge of falsity in their contents;

c.  failing to abide by the terms of contractual agreements to the detriment of the other party;

d.  transferring trademarks without right of law;

e.  providing material misrepresentations to the public, government authorities, advertisers and investors;

f.  purporting to have professional qualifications related to accomplishments having no factual basis;

g.  not paying bills for work provided by subcontractors and staff;

h.  not fulfilling contractual obligations;

i.  supplying false information on contracts and gaming related applications;

j.  unlawful use of copyrighted material;

k.  disseminating false and misleading press releases;

l.  failing to produce magazine on a consistent basis;

m.  misleading advertisers and the general public concerning the magazine's distribution;

n.  using the Rounder 'brand' to secure contracts which only benefit the Defendants;

o.  advertising products with intent not to supply reasonably expectable public demand;

p.  firing staff without just cause;

q.  appointing family members and friends to positions they are unqualified to hold;

r.  not airing USPC nationally, or in a timely manner, as promised;

s.  not airing USPC PLO Championship as promised;

t.  attempting to escort a final table player's financial backer into the 'hole card' production area, during play;

u.  negotiating deals with at least two final table players to promote a product with the intent of benefiting the Defendants;

v.  not producing events as promised;

w.  collecting ad revenue under false pretenses;

x.  aiding and abetting the filing of deceptive SEC documents.

y.  opening bank accounts in Florida and Nevada in the Rounder Enterprises Inc.'s, name without registering the company in those states

322.  At the time the aforesaid fraudulent and/or misleading statements were made, Defendants knew them to be false and intended to cause Plaintiff to rely upon them to his detriment.

323.  At the time the aforesaid fraudulent and/or misleading statements were made, Plaintiff had no way of knowing or discovering that the statements were false or misleading.

324.  The purpose of the aforesaid fraudulent and/or misleading statements was to induce Plaintiffs to accede control of the Rounder brand, illegally and in violation of the promises to, agreements with and/or representations made to the Plaintiff.

325.  The Plaintiff relied on the aforesaid fraudulent and/or misleading statements to their detriment.

326.  The Plaintiff's manifestation of assent was induced by the Defendants' fraudulent and material misrepresentations upon which the Plaintiff was justified in relying upon.

327.     By reason of the aforementioned fraudulent and/or misleading statements, Plaintiff (i) sustained damages in his business and/or property, and (ii) suffered physical, emotional and other damages.

328.     The Defendant's conduct, as described herein, was done with a conscious disregard of the Plaintiff's rights and with knowledge that such conduct would injure Plaintiff, so as to constitute oppression, fraud or malice. In order to punish the Defendants and set an example and thereby prevent others from being treated in this manner, exemplary damages are necessary. Accordingly, in addition to their actual damages, Plaintiff is entitled to recover punitive and exemplary damages against the Defendants in an amount to be determined to be reasonable under the circumstances consistent with NRS §42.005.

329.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT IV – BREACH OF CONTRACT

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

330.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

331.     Paragraph 3 of the agreement between the Plaintiff and the Defendants states; "(at no cost or expense to the Existing Shareholders) produce and distribute (or cause to be so distributed) a television program based on and designed to promote the brand, identity and marks of the Corporation;"

332.    Plaintiff has been unable to confirm a television program was distributed as promised.

333.    Paragraph 4 of the agreement states Defendants will; "utilize its relationships within the gambling and hospitality industries to cultivate for Rounder Magazine (a publication owned in its entirety by the Corporation) advertiser relationships designed to enhance the profitability of such magazine."

334.    Defendants have instead, breached the terms of the contract by failing to perform such listed acts and damaged Rounder relationships within the gambling and hospitality industries by:

   a.    Failing to follow through on promises made to casino clients, such as not printing the magazine as promised resulting in the breaching of signed insertion order contracts.

   b.    Failing to air the USPC Main Event in a timely manner, if at all.

   c.    Failing to air the USPC PLO Championship Event as promised.

   d.    Disseminating false information through press releases and on-line advertisements, inclusive of gaming industry logos such as Trump Taj Mahal and USPC, causing damage to the credibility of said brands.

   e.    Claiming a willful association of Rounder, Trump Taj Mahal, and the USPC brands to an arguably 'sham' company such as The World Series Of Golf, thus damaging all brands associated.

335.    Paragraph 5 of the agreement states Defendants will; "execute such other and further documents, instruments of conveyance, make such filings and do all such things as may be reasonable, necessary and convenience to effectuate the terms hereof."

336.    Instead, Defendants have conducted business in such a manner that Rounder Enterprises Inc. is put at risk, such as filing documents in the name of unregistered

entities, not renewing business licenses, and failing to file required corporate documentation.

337.     Paragraph 5 of the agreement states that Plaintiff and Defendants will; "be bound be a due of loyalty and of good faith and fair dealing as to the manner in which they deal with one another for the benefit of the Corporation."

338.     Instead, Defendants have seized control of the Rounder name and trademarks by transferring, without consultation with Plaintiff, the marks to Compass Entertainment Group LLC, and continue to use Rounder's prior good name and reputation to solicit contracts and enter into agreements which only benefit the Defendants, all the while disregarding the magazine, allowing it to languish, further damaging it's prior reliable reputation.

339.     Paragraph 10 of the agreement states that; "any party may freely assign this Agreement in whole or in part to a third party subject only to the express assumption in writing each and every obligation of Licensee hereunder.  Each party shall give the others written notice of any assignment."

340.     Instead, Defendants have breached the terms of the contract by failing to perform such listed acts and thereafter seized control of the Rounder name and trademarks by transferring, without consultation with Plaintiff, the marks to Compass Entertainment Group LLC., and continue to use Rounder's prior good name and reputation to solicit contracts and enter into agreements which only benefit the Defendants, all the while disregarding the magazine, allowing it to languish, further damaging it's prior reliable reputation.

341.     Without limitation, Defendants have breached each and every one of the contractual provisions listed above and have committed multiple breaches of the Agreement by, *inter alia*, committing the acts which are incorporated herein by reference.

342.    Defendants have breached the above contractual provisions in connection with each third party agreement entered into without the Plaintiff. Each breach constitutes separate, independent and continuing breaches of the parties' agreements.

343.    Except to the extent that he was fraudulently induced, purposefully excluded by the Defendants from any related activities, and lied to on countless occasions, the Plaintiff satisfied all of his obligations under the agreements.

344.    As a direct and proximate result of the Defendants' breaches of the parties' Agreements, Plaintiff has incurred actual and substantial monetary damages, and will continue to incur such damages, in an amount to be determined at the final hearing in this matter.

345.    By reason of the aforementioned breach of contract, Plaintiff (i) sustained damages in his business and/or property, and (ii) suffered physical, emotional and other damages.

**346.**    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT V – NEGLIGENCE

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

347.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

348.    Defendants were negligent in the manner they communicated with Plaintiff, dealt with Plaintiff's website, trademarks and his interest in Rounder Enterprises LLC.

349.     Defendants were negligent in falsely reporting the proper individuals on their junket license.

350.     Defendants were negligent in their association with known criminals.

351.     Defendants were negligent in corporate activities such as the payment of financial obligations, retention of qualified staff, maintenance of corporate filings.

352.     By reason of the aforementioned negligence, Plaintiff (i) sustained damages in his business and/or property, and (ii) suffered physical, emotional and other damages.

353.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT VI - NEGLIGENT SUPERVISION

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

354.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

355.     Defendants had a duty to supervise each and every one of their employees, officers, representatives and/or agents to insure that they acted in the interest of the partnership and Rounder marks.

356.     Defendants failed to supervise their employees, officers, representatives and/or agents involved with the operation of the Rounder marks, events, and corporate activities.

357.     As a direct and proximate result of Defendants failure to properly supervise their employees, officers, representatives and/or agents involved with the Rounder marks, the magazine ceased publication, employees were terminated, bill went unpaid, corporate

filings were ignored, trademarks were stolen and other egregious events as listed within happened.

358.     By reason of the aforementioned negligent supervision, Plaintiff (i) sustained damages in his business and/or property, and (ii) suffered physical, emotional and other damages.

359.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT VII – UNJUST ENRICHMENT

(Against all Defendants)

360.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

361.     As a direct result of Defendants' scheme to defraud Plaintiff, their use of an illegal enterprise, or other fraudulent, unlawful and/or negligent acts as described above, Defendants came into possession of assets which were not theirs and which they accepted for safekeeping and which were to be utilized for the benefit of the Plaintiff and others according to the terms of the contracts entered into with and representations made to Plaintiff.

362.     By their acts, Defendants became unlawfully enriched through the assets, agreements and marks that they misappropriated from Plaintiff and which Defendants used for purposes which were unintended, not agreed to and/or were without Plaintiff's knowledge and/or permission.

363.     By reason of the aforementioned unjust enrichment, Plaintiff (i) sustained damages in his business and/or property, and (ii) suffered physical, emotional and other damages.

364.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT VIII – CONSPIRACY

### (Against all Defendants)

365.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

366.     The "Compass Entertainment" scheme constituted a fraudulent enterprise operating in and affecting interstate and foreign commerce.

367.     Defendants, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge knowingly, willfully and unlawfully did conspire, agree and/or combine together with each other to associate with, conduct, participate in and further the affairs of the enterprise through a pattern of racketeering activity in violation of 18 USC § 1962 (c). Such conspiracy in unlawful and violates 18 USC § 1962 (d).

368.     The object of the conspiracy was to associate with, participate in, and conduct the affairs of the fraudulent enterprise, in part, by inducing Plaintiff to cede control of the Rounder marks, website and related company which they would later pillage and benefit exclusively from unlawfully, illegally and in violation of the promises to, agreements with and/or representations made to Plaintiff.

369.    Defendants knowingly and willfully devised a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice to defraud, did cause to be transmitted by means of wire, radio, and television in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing said scheme and artifice, in violation of Title 18, United States Code, Section 1343.

370.    The overt acts committed or facilitated by Defendants, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge to execute and accomplish the above described unlawful conspiracy include but are not limited to the illegal acts as set forth in the Complaint, constitute a pattern of racketeering activity as defined in 18 USC § 1962 et seq.

371.    By reason of the aforementioned racketeering enterprise activities, Defendants, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge ability to defraud Plaintiff was immeasurably enhanced because the illegal operation of the enterprise facilitated the fraud and aided its concealment, thereby damaging Plaintiff in his business and/or property.

372.    As a direct and proximate result of the Defendants' actions the Plaintiff has and will continue to incur actual and substantial monetary damages, to be determined at trial

373.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT IX – EQUITABLE DISGORGEMENT/FRAUD

(Against all Defendants)

374.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

375.    As a direct result of Defendants scheme to defraud Plaintiff, their use of an illegal enterprise, or other fraudulent, unlawful and/or negligent acts as described above, Defendants became unlawfully enriched through the agreements, established business associations, trademarks and goodwill which came into their possession, which were not theirs and which they accepted for safekeeping and which were not equitably shared with the Plaintiff according to the terms of the contracts entered into with and representations made to Plaintiff.

376.    It is unlawful, illegal and inequitable for Defendants to be permitted to retain the assets, trademarks and beneficial contracts that came into their possession, which were not theirs and which they accepted for safekeeping and which was to be returned to Plaintiff at a later date and according to the terms of the contracts entered into with and representations made to Plaintiff.

377.    By reason of the aforementioned acts, Defendants should be compelled to equitably disgorge the assets, trademarks and beneficial contracts which came into their possession, and/or all other property, assets and/or monies which were acquired through the use of the Plaintiffs' trademarks or goodwill or which are or may be other assets of Defendants.

378.    As a direct and proximate result of the Defendants' actions the Plaintiff has and will continue to incur actual and substantial monetary damages, to be determined at trial

379.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the

trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT X - BREACH OF FIDUCIARY DUTY

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

380.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

381.     On or about October 12, 2008, Plaintiff and Defendants entered into an agreement.

382.     The purpose of the agreement was manifold, including: to establish Defendants' and Plaintiff's joint ownership in Rounder Enterprises Inc; to carryout a single business enterprise; and to mutually profit from the creation and distribution of Rounder branded events and items.

383.     As a joint venture partner, Defendants owed a fiduciary duty to both Plaintiff and the Joint Venture.

384.     Plaintiff placed his trust in Defendants, and Defendants accepted Plaintiff's trust.

385.     As joint venture partners, Defendants were obligated to maximize revenue from the Rounder brand and to put the interests of the Joint Venture in front of their own interests.

386.     Defendants breached their fiduciary duties to Plaintiff and to the Joint Venture by, among other things and without limitation:

   a.  Lying to Plaintiff;

   b.  Failing to apprise the Plaintiff of agreements entered into which would affect the Joint Venture;

   c.  Failing to pay the obligations of the Joint Venture;

d.  Allowing the Rounder website and publication to languish or cease;

e.  Unilaterally registering the trademarks to and copyright in Rounder marks in Defendants's name, thereby wrongfully stripping the Joint Venture of valuable intellectual property rights;

f.  Acting in their own best interests at the expense of the Joint Venture;

g.  Acting in its own best interests at the expense of the Plaintiff, its Joint Venture partner;

h.  Exploiting the Rounder brand on their Compass Entertainment website, and failing to account for the advertising and other revenues derived therefrom;

i.  Failing to properly account to Plaintiff.

387.  Owing to Plaintiff's original concept and initial efforts, Defendants have realized unknown revenues from advertising, solicitation of investment funds, financial agreements with third parties and other revenue from the brand. Yet, because of Defendants' self-dealing and wrongful conduct, Plaintiff, both individually and in his capacity as a partner in the Joint Venture, has failed to receive the benefit of its bargain and the just rewards for the success of the Rounder brand.

388.  Defendants' breach of their fiduciary duty to Plaintiff has proximately caused Plaintiff to suffer substantial economic damages.

389.  In breaching its fiduciary duties to Plaintiff, Defendants have acted with malice and oppression, and in conscious disregard of Plaintiff's and the Joint Venture's rights.

390.  Defendants have caused and intended to cause economic harm to Plaintiff with full knowledge of the wrongfulness and unjustified nature of their conduct.

391.  As a direct and proximate result of the Defendants' actions the Plaintiff has and will continue to incur actual and substantial monetary damages, to be determined at trial

392.  Defendants' conduct was deliberate and intentional.

393.     Given the outrageousness of Defendants' willful, malicious and wanton conduct, Plaintiff should be awarded punitive and exemplary damages sufficient to punish Defendants for engaging in this conduct and to deter similar conduct in the future.

394.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XI - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

395.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

396.     Included in the parties' Agreements is an implied covenant of good faith and fair dealing by which Defendants agreed not to deprive the Plaintiff of the full benefits of the Agreements, and not to take any action with the motive to frustrate Plaintiff's rights under the Agreements.

397.     Defendants have breached their implied covenant of good faith and fair dealing in that they have, in bad faith and with a motive to intentionally frustrate, destroy or injure Plaintiff's enjoyment of his rights under the Agreements by:

    a.   failing to share in advertising revenues;

    b.   unilaterally making all business deals related to the Rounder brand, without consulting with the Plaintiff;

    c.   failing to protect Plaintiff's interest in negotiating with third parties;

d.   engaging in repeated self-dealing;

e.   unilaterally registering multiple Rounder trademarks in Compass Entertainment's name;

f.   acting in their own best interests at the expense of the Joint Venture;

g.   lying to and misleading the Plaintiff;

h.   exploiting their own interests in the Rounder magazine and refusing to account to the Plaintiff for the advertising and other revenues derived therefrom.

398.   Defendants' unfair dealing has frustrated the parties' agreed common purposes and vitiated not only the Plaintiff's reasonable expectations, but also Plaintiff's benefit of the bargain.

399.   Defendants have acted in bad faith with the express goal of destroying Plaintiff's right to enjoy the benefits of the Agreements.

400.   Defendants breached the implied covenant when they acted to frustrate the purpose of the contract by taking advantage of their position to control implementation of the agreement's terms.

401.   The violation of these specifically implied contractual obligations and terms denied the Plaintiff the fruits of the contract.

402.   As a direct and proximate result of the Defendants' actions the Plaintiff has and will continue to incur actual and substantial monetary damages, to be determined at trial

403.   WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XII - DECLATORY RELIEF

(Against all Defendants)

### (As to Copyright Ownership in Rounder marks)

404.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

405.     As required by section 6.7 of the agreement, "The Licensee shall hold all goodwill generated by its operation of the Trade Mark under this Agreement as bare trustee for the benefit of the Owner."

406.     Defendants have breached this section by assuming all goodwill generated by the marks as being their own and not the Plaintiff Owner.

407.     Defendants have recently registered all Rounder trademarks in the name of Compass Entertainment only and not in the name of the rightful trademark owner, Rounder Enterprises Inc.

408.     It would be appropriate for the Defendants to, by order of this court, notify the United States Copyright Office and take the steps necessary to amend the copyright registrations such that they are listed under Rounder Enterprises Inc and not the Defendant-controlled Compass Entertainment Group LLC.

409.     It would also be appropriate for Jeffrey P. Kranzdorf —the licensed attorney who knowingly made false and misleading statements to the USPTO in applications for Rounder related marks— to voluntarily, or upon court order, report himself to his State Bar Association and to the USPTO Director for sanctions related to assisting Tom McDonald in the fraudulent assignment of the "ROUNDER' and "R" marks to Compass Entertainment Group LLC.

410.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the

trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XIV - DISSOLUTION OF THE JOINT VENTURE/ RESCISSION OF TRADEMARK LICENSES

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

411.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

412.     As referenced above, Defendants and Plaintiff formed a Joint Venture wherein both parties agreed to a common purpose, contributed labor and capital to the Joint Venture, and had a mutual interest, and a common goal of mutually profiting from the exploitation of the Rounder brand and all related projects.

413.     Since the agreements were never properly executed they should not have ever been legally binding upon the Plaintiff.

414.     Nonetheless, as documented herein, Defendants' actions constitute a willful and persistent breach of the parties' Joint Venture and, by virtue of their actions; Defendants have wrongfully expelled the Plaintiff from the Joint Venture and have caused the wrongful dissolution of the Joint Venture as a matter of law.

415.     Given the Defendants' actions, it is not reasonably practicable for the parties to carry on the business of the Joint Venture so the Plaintiff respectfully prays that this court enter a decree dissolving the joint venture and rescinding the trademark licenses.

416.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the

trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XV - DEMAND FOR EQUITABLE ACCOUNTING

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

417.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

418.    Pursuant to the United States Copyright Act, joint owners of a copyright are deemed to be tenants-in-common, with each having an independent right to use or license the copyright, subject to a duty to account to the co-owner for any profits earned from the copyrighted work.

419.    The Plaintiff has an ownership interest in the Rounder brand, which has been misappropriated by the Defendants without consultation, or any accounting for the profits derived there from.

420.    As a joint owner in the copyright to the Rounder brand, Plaintiff is entitled to a full accounting of all the profits realized from the use of the mark, including all advertising and investment revenue generated in connection with the marketing of the brand.

421.    Plaintiff is in need of an accounting in order to determine the exact amount of money that he is owed by the Defendants. Plaintiff's remedy at law will not be full and adequate absent an extensive accounting and Plaintiff is thus entitled to the equitable remedy of an accounting.

422.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the

trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XVI - CONVERSION

### (Against all Defendants)

423.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

424.    Plaintiff is the rightful owner of the Rounder brand and related intellectual property which includes and consists of, but is not limited to, its unique, special and novel idea, all underlying copyright and trademark registrations, physical embodiments including RounderLife magazine and website, all monies garnered from unauthorized usage and all wrongfully obtained contracts derived from their use; and Plaintiff has a right to possess the property.

425.    Defendants have exercised unauthorized and wrongful dominion and control over the Plaintiff's property rights in the Rounder brand.

426.    Defendants' numerous acts of conversion have deprived Plaintiff of his property rights in the Rounder brand.

427.    As a direct and proximate result of the Defendants' actions the Plaintiff has and will continue to incur actual and substantial monetary damages, to be determined at trial.

428.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XVII - AIDING AND ABETTING OR INDUCING BREACH OF

## FIDUCIARY DUTY

(Against all Defendants)

429.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

430.     Defendants knowingly, willfully and unlawfully did conspire, agree and/or combine together with each other to associate with, conduct, participate in and further the affairs of The Fraudulent Enterprise through a pattern of making knowingly false and/or misleading statements and performing such activities as listed which were designed to induce a breach of their fiduciary duties to the Joint Venture and to the Plaintiff.

431.     As a direct and proximate result of the Defendants' actions the Plaintiff has and will continue to incur actual and substantial monetary damages, to be determined at trial

432.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.


## COUNT XVIII - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

(Against all Defendants)

433.     Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

434.     Plaintiff had established business relationships and a positive rapport with the printers, advertisers and staff of the Rounder magazine, the management at major casino properties throughout the United States, including but not limited to Trump Entertainment Resorts, MGM Resorts International, Caesars Entertainment, Wynn

Resorts, Las Vegas Sands Corporation, Hard Rock Casinos, Boyd Gaming, and Station Casinos, in addition to many independent casino properties, para-mutuals and dog tracks as well as other individuals and entities.

435.    Defendants were aware of these relationships and sought to benefit from them at the expense of the Plaintiff, who has either been excluded from these relationships by conspiratorial design or been barred from doing so as a result of the Defendants' actions.

436.    As a direct and proximate result of the Defendants' actions the Plaintiff has and will continue to incur actual and substantial monetary damages, to be determined at trial

437.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XIX – MISLEADING ADVERTISING

### (Against all Defendants)

438.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

439.    At all times material hereto Defendants knew that statements disseminated and promoted on their website were false and misleading, but continued to disseminate and promote the false and misleading statements with the intent of inducing the public to utilize the website.

440.    The public has relied and continues to rely on the information provided on the website believing it to be true and factual.

441.    As a direct and proximate result of the Defendants' actions the Plaintiff and the general public has and will continue to incur actual and substantial monetary damages, to be determined at trial

442.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XX – INJUNCTIVE RELIEF

(Against all Defendants)

443.    This in an action in equity for injunctive relief.

444.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

445.    Based on the facts as set forth herein, Plaintiff has a substantial likelihood of success on the merits of the asserted causes of action.

446.    Plaintiff does not have an adequate remedy at law.

447.    Monetary damages are inadequate to protect the present and future business interests of the Plaintiff.

448.    Injunctive relief would also provide a benefit to the public as it would prevent misleading advertising, fraudulent inducement to invest or otherwise do business with the Defendants while they clearly lack the intent or ability to make good on their claims and promises, and other actionable conduct through the use of the Internet.

449.    WHEREFORE, Plaintiff seeks an order requiring the Defendants to immediately cease and desist using the Rounder mark, in any form, on any website under their control or influence, or any business or financial transaction; that they preserve all registered

marks referencing Rounder; that they preserve all account statements related in any way to Rounder or the agreements with the Plaintiff, and; that they preserve the rounderlife.com website such that it may be returned without further alteration.

## COUNT XXI – UNFAIR COMPETITION AND ASSIGNMENT-IN-GROSS UNDER §§ 43(a) AND 1060(7) OF THE LANHAM ACT

(Against all Defendants)

450.    Plaintiff repeats and realleges paragraphs 13 to 300 inclusive as if the same were set forth fully and at length herein.

451.    The plaintiff has enforceable trademark rights in the Rounder mark or name, and the defendants have made unauthorized use of them 'such that consumers were likely to confuse the two.'

452.    As a direct and proximate result of the Defendants' actions the Plaintiff and the general public has and will continue to incur actual and substantial monetary damages, to be determined at trial

453.    WHEREFORE, the Plaintiff demands judgment against Defendants for an award of actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XXII – VIOLATION OF 2005 NEVADA CODE - CHAPTER 598 — DECEPTIVE TRADE PRACTICES NEVADA UNFAIR TRADE PRACTICE ACT

(Against Compass Entertainment Group LLC, Gregory T. McDonald, Gregory J. McDonald, Suzanne M. Labelle, Thomas A. McDonald)

454.     Under NRS 598.0915 (3) a person engages in a deceptive trade practice if, in the course of his business or occupation, he knowingly makes a false representation as to affiliation, connection, association with or certification by another person.

455.     Defendants utilize World Series of Poker footage in their promotional materials implying an affiliation or connection with that organization.

456.     Under NRS 598.0915 (9) a person engages in a deceptive trade practice if, in the course of his business or occupation he advertises goods or services with intent not to sell or lease them as advertised.

457.     Defendants advertise and promote the sale of the Rounder magazine as being available by subscription and in bookstores throughout the country when this is not true.

458.     Under NRS 598.0915 (10) a person engages in a deceptive trade practice if, in the course of his business or occupation he advertises goods or services for sale or lease with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity.

459.     Defendants advertise and promote the sale of Rounder SHOTZ ENERGY DRINK when they are aware that they neither stock it nor have it readily available for sale to the public.

460.     Defendants advertise and promote the opportunity to win a seat at the ROUNDER YACHT EVENT without any disclaimer regarding sufficiency of numbers of participants to hold the event.

461.     Under NRS 598.0915 (11) a person engages in a deceptive trade practice if, in the course of his business or occupation he advertises goods or services as being available free of charge with intent to require payment of undisclosed costs as a condition of receiving the goods or services.

462.     Defendants fail to disclose potential recurring monthly charges to Rounder Club members seeking to win a seat on the YACHT EVENT despite stating that sign-up is free.

463.     Under NRS 598.092 (g) a person engages in a deceptive trade practice when in the course of his business or occupation he represents that he is licensed by an agency of the State to sell or offer for sale investments or services for investments if he is not so licensed.

464.     Upon information and belief, Greg McDonald sought to solicit investment funds purporting that he had a license with Trump Taj Mahal through the NJ gaming commission.

465.     WHEREFORE, the Plaintiff demands judgment against Defendants for an award of civil penalties, actual damages, punitive damages, disgorgement of all monies, trademarks and beneficial contracts they received from The Fraudulent Enterprise, rescission of the trademark licenses, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.


## DEMAND FOR JURY TRIAL

466.     Plaintiff hereby reiterates his earlier demand for a trial by jury of all issues so triable.

I HEREBY CERTIFY THAT the above is true and correct to the best of my

knowledge and belief.

-----------------------------------------------

EVERT CALDWELL

Date: ___Feb. 29, 2012____

## ACKNOWLEDGEMENT

COUNTY OF JEFFERSON
STATE OF ALABAMA

SWORN TO AND SUBSCRIBED before me this 29th day of ___February___,
2012 by Evert Caldwell ( ) who is personally known to me or (✓) who produced
___AL  DL_____ as identification and did (✓) or did not ( ) take an oath and who
executed the forgoing instrument and acknowledged before me that he executed the same.

Notary Public: _____
Typed Name: ___Levi Fingerman_____
My Commission Expires: ------------------------

Dated: ___2/29/12_____

MY COMMISSION EXPIRES MARCH 22, 2015

Respectfully submitted:

-----------------------------------------------

Evert Caldwell, pro se
3221 Verdure LN
Birmingham, Alabama 35226
Telephone (205) 777-1826
Email: evertcaldwell@gmail.com