UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EVERT CALDWELL, | Case No. 2:12-cv-00458-APG-GWF |
| Plaintiffs, | **ORDER GRANTING LEAVE TO FILE AMENDED COMPLAINT AND PARTIALLY GRANTING MOTION TO DISMISS** |
| v. | |
| COMPASS ENTERTAINMENT GROUP, LLC; ROUNDER, INC.; ROUNDER ENTERPRISES, INC.; THOMAS A. MCDONALD; GREGORY T. MCDONALD; JEFFREY P. KRANZDORF | |
| Defendants. | |

Defendants Compass Entertainment Group, LLC, Rounder, Inc., Gregory T. McDonald, and Thomas A. McDonald have jointly filed a Motion to Dismiss (Dkt. No. 48) Plaintiff Evert Caldwell's First Amended Complaint ("FAC"). For the reasons set forth below, the court hereby grants the motion in part, and dismisses with leave to amend all claims arising from Plaintiff's alleged ownership of trademarks. The court denies the motion as to all claims arising from Defendants' alleged breach of contract and fraudulent inducement.

I.  BACKGROUND

A.  PROCEDURAL HISTORY

On October 6, 2012, the Court dismissed, with leave to amend, *pro se* Plaintiff's original seventy-eight page complaint. (Dkt. No. 1). In its Order granting the Plaintiff leave to amend his

complaint, this court provided detailed instructions: First, Plaintiff must assert his own rights rather than those of any third party. (Dkt. No. 40 (citing *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987)). Second, corporations and other unincorporated associations must appear through an attorney. (*Id.* (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993))). Next, Plaintiff was advised to attach a copy of the alleged contracts to the complaint. (*Id.*) Plaintiff was directed that he must plead with particularity facts supporting any claims based on fraud. (*Id.* (citing Fed. R. Civ. P. 9(b))). Plaintiff was directed to specify in his complaint the "who, what, when, where, and how" of the alleged activities. (*Id.*) Lastly, this court instructed Plaintiff to ensure that his statement of his claims is "*short* and *plain*." (*Id.* (citing Fed. R. Civ. P. 8(a) (emphasis added))). Plaintiff has not followed those instructions.

**B.  FACTS**

Excluding facts that are either incomprehensible or facially irrelevant to Plaintiff's possible claims, the following facts, as best the court can glean them, are alleged in Plaintiff's still-prolix and tedious Amended Complaint. (Dkt. No. 44.)

Rounder Magazine's first issue published in December 2006. (Dkt. No. 44-1 "Exhibit 4.") In 2007, Plaintiff "created [the] Rounder brand." (2:12-cv-00458 Dkt. No. 44 ¶ 152.) At least by October 2008, Rounder Enterprises, Inc., a South Carolina corporation responsible for publishing Rounder Magazine, consisted of three individuals, including Plaintiff. (See 44-1, "exhibit 3.") At the time, Plaintiff owned 24% Rounder Enterprises, Inc.'s stock, while the other two individuals, not named in this lawsuit, owned 51% and 25% each.

In July 2008, Rounder Enterprises, Inc. ceased producing the magazine and permitted Plaintiff to continue producing magazines "while a new investor was secured." (Dkt. No. 44 ¶ 149.)[1] Later that month, on July 16, 2008, someone—presumably Plaintiff—registered the

---

[1] The three shareholders allegedly "determined ... Plaintiff was the only person who could carry on the 'goodwill' associated with the brand and any related marks." (Dkt. No. 44 ¶ 151)

internet domain "rounderlife.com." (*Id.* at ¶ 150.) Plaintiff produced and published two issues of Rounder Magazine in August 2008 and September 2008. (*Id.* at ¶ 153.)

In September 2008, Defendants Gregory T. McDonald and Thomas A. McDonald, operating as Defendant Compass Entertainment Group LLC (hereinafter "Compass"), approached Plaintiff as a potential investor in Rounder Enterprises, Inc. (*Id.* at ¶¶ 37-71.) Beginning September 28, 2008, Compass gave Plaintiff various promotional materials and statements, and otherwise made several representations about Compass on which Plaintiff relied in reaching three agreements with Compass. (*e.g., Id.* at ¶¶ 37-71, 73-79.)

One agreement is titled "Agreement to Reorganize Shareholdings of Rounder Enterprises, Inc." (Dkt. No. 44-1, "exhibit 3.") This agreement, apparently dated sometime in October 2008, transfers to Compass on a pro-rata basis a controlling majority of stock in Rounder Enterprises, Inc., giving Compass 51% of the shares, Plaintiff 15% of the shares, and two other existing shareholders 24% and 10%. (*Id.*) This agreement also specifies that, based on the reorganized shareholdings, Compass has the right to "control the name, brand, logo, website, merchandise sales of the Corporation's magazine, the television program of the same name and all ancillary and allied goods, services and facilities likewise named."[2] (*Id.*)

Another agreement, signed October 12, 2008 (Dkt. No. 44 ¶ 33), is a "Co-Production Agreement" that purports to give three signing parties—Plaintiff, Compass, and a third party not named in this lawsuit—each a one-third ownership of "All Programs produced under the [License Agreement] between Compass Entertainment LLC and Rounder Enterprises, Inc.," along with one-third of "net receipts" resulting from any such programs. (Dkt. No. 44-1, "exhibit 1").

Plaintiff has not attached to his Amended Complaint or response to the motion the referenced License Agreement, but instead provides the court with only what is apparently the first page of the agreement, containing a few definitions and no terms. (*See* Dkt. No. 44-1, "exhibit 2".) Plaintiff also fails to describe the terms of this License Agreement in his Amended

---

[2] This presumably includes the trademark.

3

1  Complaint. In any event, no alleged facts suggest Plaintiff is himself a party to the License
2  Agreement. (*See id.*)
3        On October 14, 2008, Defendant Tom McDonald, signing as "Manager" of Compass
4  Entertainment Group LLC, applied to register a trademark for "Rounder LIFE TV." (Dkt. No.
5  44-3, "exhibit 1.")
6        Between 2008 and at least 2011, Defendants created several products or programs using
7  the names "Rounder" or "Rounder Life" that Plaintiff contends fall under the "Co-Production
8  Agreement." (*See, e.g.*, Dkt. No. 44 ¶¶¶ 80, 93, 96) Defendants have not accounted to Plaintiff
9  for receipts from these products, nor have Defendants given Plaintiff a one-third share of receipts
10 from these products. (*See id.*)
11       On April 26, 2011, Defendant Greg McDonald formed Defendant Rounder, Inc. (Dkt.
12 No. 44 ¶ 127.) Plaintiff has provided as an exhibit an "Initial Disclosure Statement" that
13 Rounder, Inc. released at some point after September 26, 2011. (*See* Dkt. No. 44-1, "exhibit 7.")
14 This document states that Rounder, Inc. was incorporated or organized in Florida on February 4,
15 2004. (*See id.*)
16       Plaintiff's FAC asserts claims for fraud, breach of contract, unfair competition, violations
17 of the Lanham Act, conspiracy to defraud, breach of fiduciary duty, bad faith, negligence,
18 conversion, and unjust enrichment. (Dkt. No. 44.) Defendants' motion to dismiss asserts that
19 Plaintiff has not proved the existence of a contract between the parties, nor alleged facts
20 supporting his ownership of any trademarks. (Dkt. No. 48.)
21 **II.  ANALYSIS**
22     **A.  Legal Standard**
23         **1.  Motion to Dismiss**
24       Courts hold lay-plaintiffs to less stringent construction standards than those to which it
25 holds lawyers. A *pro se* complaint should "be liberally construed ... however inartfully pleaded."
26 *Estelle v. Gamble*, 429 U.S. 97, 106 (1995) (internal quotation marks omitted). *Cf.* Fed. Rule
27
28

Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). Nevertheless, lay-plaintiffs must comply with the Federal Rules of Civil Procedure.

A properly pled complaint is a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not require detailed factual allegations, but it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

Additionally, a party asserting a claim involving fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Thus, the complaint must "state the time, place, and specific content of the [fraud] as well as the identities of the parties to the [fraud]." *Schreiber Distrib. Co. v. Serve-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Courts consider motions to dismiss in two steps. *Iqbal*, 556 U.S. at 679. First, the court accepts as true all well-pleaded factual allegations. *Id.* Legal conclusions, including mere recitals of the elements of a cause of action supported only by conclusory statements, hold no weight. *Id.* at 678. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that, if true, support a reasonable inference that the defendant is liable. *Id.* at 663. If the facts as alleged do not support more than a mere possibility of misconduct, the complaint has "has not shown ... that the pleader is entitled to relief," and the complaint will be dismissed. *Id.* at 679 (internal quotation marks and citation omitted); *Twombly*, 550 U.S. at 570.

### 2. Leave to Amend

In relevant part, Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Five factors guide the district court's discretion to grant leave to amend: "bad faith, undue delay, prejudice to the opposing party, and whether the plaintiff has previously amended the complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (internal quotation marks and citation omitted). Although "[t]he court's discretion to deny such leave is particularly broad where the plaintiff has previously amended its complaint," the Ninth Circuit instructs trial courts to apply with "extreme liberality" Rule 15's policy favoring amendments. *Id.* (internal quotation marks and citation omitted); *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

Under Rule 15(c), a new claim in an amended complaint "relates back to the date of the original [complaint] when" the "applicable statute of limitations allows relation back" or the new claim arises out of the same "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(A)–(B).

### B. Analysis

#### 1. Count IV: Conspiracy to Defraud

Plaintiff alleges in Count IV of his FAC a conspiracy to defraud. Under Nevada law, to state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant to the conspiracy; and (3) the damage resulting from such act or acts. *Ungaro v. Desert Palace, Inc.*, 732 F.Supp 1522, 1534 n.3 (D. Nev. 1989). Conspiracy allegations must be more than mere conclusory statements. *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1979); *Williams v. Sumner*, 648 F.Supp. 510, 513 (D. Nev. 1986).

A claim of civil conspiracy to defraud requires more. The plaintiff must allege (1) a conspiracy agreement; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff. *Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety*, 121

Nev. 44, 110 P.3d 30, 51 (2005). In addition, an "underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." *Id.* Thus, a claim for conspiracy to commit fraud must be pled with the same particularly as the fraud itself. *See Twombly*, 550 U.S. at 565 (2007). Allegations of conspiracy to defraud must be accompanied by "the who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). A "plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co. v. Southwest Gas Corp.*, 165 F.Supp.2d 1010, 1020-21 (D. Ariz. 2001) (internal citations and quotation marks omitted); *Goodwin v. Executive Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1254 (D. Nev. 2010).

Plaintiff has failed to allege with sufficient factual particularity that Defendants reached a conspiracy agreement to defraud. Accordingly, this claim is dismissed.

### 2. Count IX: Unjust Enrichment

Count IX of Plaintiff's complaint alleges unjust enrichment. "The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." 66 Am.Jur.2d Restitution § 3 (1973). In Nevada, "[t]he essential elements of quasi contract are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof. Unjust enrichment occurs when ever a person has and retains a benefit which in equity and good conscience belongs to another." <u>Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975</u>, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)).

However, "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* (citing 66 Am.Jur.2d *Restitution* § 6 (1973)). "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Id.* (quoting 66 Am. Jur. 2d *Restitution* § 11 (1973)) (alterations in original); *see Lipshie v. Tracy Investment Co.*, 566 P.2d 819, 824 (Nev. 1977) ("To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles.").

Although Plaintiff alleges a written contract between himself and Defendants, parties are entitled to plead in the alternative. Although the portion of Plaintiff's unjust enrichment claim based on the trademark fails because Plaintiff did not own the trademark (as discussed below), Plaintiff may at this stage proceed on his unjust enrichment claim as it relates to other assets.

### 3. Count III: Unfair Competition/Lanham Act Claims; Count VII: Negligence; Count VIII: Conversion

Assuming *arguendo* that Rounder Enterprises, Inc. ("Rounder I") initially established ownership of the Rounder trademark in connection with Rounder Magazine, Plaintiff has alleged no facts that support his personal ownership of that trademark. Thus, all claims dependent on Plaintiff's ownership of the trademark are dismissed.

Plaintiff bases his ownership of an ill-defined trademark on a timeline of events that never establishes his personal ownership of that trademark. (*See* Dkt. No. 44 ¶¶ 149-157.) Although Plaintiff alleges that Rounder I "determined ... that the Plaintiff was the only person who could carry on the 'goodwill' associated with the brand and any related marks registered in its name," no facts suggest that Rounder Enterprises, Inc. either transferred ownership of the trademark to Plaintiff or abandoned it. Plaintiff himself alleges that Rounder I only permitted Plaintiff to use the trademark in connection with publishing Rounder Magazine until the company could secure a new investor. These facts do not support Plaintiff's ownership of the trademark.

Accordingly, Plaintiff has not alleged sufficient facts to support any claims based on Plaintiff's alleged ownership of the trademark. Plaintiff is reminded that he may not assert the rights of third parties, including those of Rounder I or the general consumer public. (*See* Dkt. No. 40 at 2.) Defendants' motion to dismiss Counts III and VIII is granted. In addition, Counts VII, X and XI are dismissed to the extent they relate to the trademark.

### 4. Count II: Breach of Contract; Count V: Breach of Fiduciary Duties; and Count VI: Breach of Covenant of Good Faith and Fair Dealing

Given the considerable leeway afforded *pro se* plaintiffs at the pleadings stage, Plaintiff has sufficiently pled claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duties claims so as to survive a motion to dismiss.

To state a claim for breach of contract in Nevada, a plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages. *Calloway v. City of Reno,* 1993 P.2d 1259, 1263 (2000). Plaintiff alleges the existence of a contract called the "Co-Production Agreement" among himself, Defendant Compass Entertainment Group LLC ("Compass"), and Defendants Thomas A. McDonald and Gregory McDonald as alter egos of Heritage Television Productions, Inc. ("Heritage"). (Dkt. No. 44, FAC 7:33). He attaches the alleged contract in its entirety as an exhibit to the FAC. (Dkt. No. 44-1, "exhibit 1".) Through this exhibit and the allegations in his FAC, Plaintiff suggests that he and Defendants agreed on October 12, 2008 to a partnership in which Plaintiff, Compass, and Heritage each own one-third of any programs produced under a separate agreement between Compass and Rounder Enterprises, Inc. (Dkt. No. 44-1, "exhibit 2"; Dkt. No. 44 ¶ 33.) Plaintiff further alleges that several of Defendants' activities fall within the corners of the "Co-Production Agreement," and Plaintiff alleges that he has seen no account for profits, nor has he received any share of receipts from Defendants' activities. (*See, e.g.,* Dkt. No. 44 ¶¶ 80, 93, 96.) Defendants' contention that Plaintiff must provide a signed copy of the contract is incorrect. Plaintiff has alleged the existence of the agreement in sufficient detail, and for purposes of the motion the court accepts as

true Plaintiff's factual allegations. *See Gamble*, 429 U.S. at 106. Defendants can request copies of the subject contracts through discovery.

However, Plaintiff fails to provide a copy of the "License Agreement" that the "Co-Production Agreement" references, or to sufficiently detail the terms of that alleged contract. Without this document, or at least allegations of its terms, the court and Defendants cannot determine whether any (and if so, which) of Defendant's activities violate the License Agreement. Plaintiff's FAC and its attached exhibits do not provide sufficient notice of Plaintiff's breach of contract claim related to the License Agreement. Accordingly, Defendants' motion to dismiss this portion of the breach of contract claim is granted.

These same facts sufficiently plead a claim of breach of fiduciary duty. "The receipt by a person of a share of the profits of a business is *prima facie* evidence that the person is a partner in the business." N.R.S. § 87.070. Partners owe each other a fiduciary duty to account for the profits of the partnership. *See* N.R.S. §§ 87.210, 87.220; Rev. Uniform Partnership Act § 404. Assuming Plaintiff can show that the Co-Production Agreement is valid, Plaintiff and Defendants apparently formed a partnership to produce programs under the Rounder brand and share its profits. (Dkt. No. 44-1, "exhibit 1".) Taking as true Plaintiff's allegations, Defendants' breach of this fiduciary relationship could entitle Plaintiff to relief, and Defendants' motion to dismiss this claim is denied.

Likewise, Plaintiff has sufficiently pled a claim of breach of the implied covenant of good faith and fair dealing. Nevada law recognizes two types of claims for breach of the implied covenant of good faith and fair dealing—contract-based and tort-based. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1209 (Nev. 1993). Every contract imposes upon the contracting parties the duty of good faith and fair dealing. *See A.C. Shaw Construction v. Washoe County*, 105 Nev. 913, 914, 784 P.2d 9, 9-10 (1989*); Ainsworth v. Combined Ins. Co.*, 104 Nev.

587, 592 n. 1, 763 P.2d 673, 676 (1988), cert. denied, 493 U.S. 958, 110 S.Ct. 376, 107 L.Ed.2d 361 (1989). "[A]n action in tort for breach of the covenant arises only in rare and exceptional cases when there is a special relationship between the victim and tortfeasor." *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006) (internal quotation marks and citation omitted). Partners of partnerships enjoy such a special relationship. *Id.* The tort remedy is also available in "certain situations in which one party holds vastly superior bargaining power." *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that Defendants, among other things, acted in bad faith in forming a partnership with him and then cutting him out of all Rounder-related activities. (Dkt. No. 44 ¶ 252.) Accepting Plaintiff's allegations as true for the purposes of this motion, these allegations sufficiently state a claim for breach of the implied covenant of good faith and fair dealing. Defendants' motion to dismiss this claim is therefore denied.

### 5. Count I: Fraud in the Inducement

Plaintiff alleges fraud in the inducement. Under Nevada law, a claim of fraud requires proof of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false or knowledge that the defendant had an insufficient basis for making the representation; (3) intent to induce the plaintiff to consent to the contract's formation; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance. *J.A. Jones Constr. v. Lehrer McGovern Bovis*, 89 P. 1009, 1018 (Nev. 2004). Fraud in the inducement is a subset of fraud. It "occurs when the promisor knows what he is signing but his consent is induced by fraud." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 415, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996).

Plaintiff has pled with particularity facts supporting his fraud claim pursuant to Fed. R. Civ. Pr. 9(b). Although rambling and not well organized, Plaintiff has alleged "the time, place and nature of the alleged fraudulent activities." *See Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 2009). Further, Plaintiff has "identified the role of [each] defendant[] in the alleged

fraudulent scheme." See *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

Accepting Plaintiff's facts as true, around September 28, 2008 at the Beau Rivage Resort & Casino in Biloxi, Mississippi, Defendants Greg McDonald and Tom McDonald presented certain promotional materials to Plaintiff and made representations to induce him into signing various contracts, including the Co-Production Agreement. These materials and representations, described in overwhelming detail, were allegedly false. Defendants Greg McDonald, Tom McDonald, and Compass knew these representations were false. Finally, Plaintiff relied on these representations in signing the Co-Production Agreement. (Dkt. No. 44 ¶ 37-69.)

Assuming these facts to be true for the purposes of the instant motion, Plaintiff has pled a plausible claim against Defendants for fraud in the inducement. Defendants' motion to dismiss that claim is denied.

### III. CONCLUSION

Accordingly, it is hereby ordered that Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART as follows:

1. Plaintiff's claims alleged in Counts III, IV, and VIII, are dismissed without prejudice.
2. Plaintiff may proceed with Counts I, II, V, VI, VII, and IX[3] (except to the extent any such claims are based upon Plaintiff's alleged ownership of the trademark).[4]

DATED this 14th day of January, 2014.

*/s/*

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[3] Counts X and XI are remedies, not claims for relief. At this stage, Plaintiff may proceed on these counts insofar as they relate to Plaintiff's remaining claims unrelated to his ownership of the trademark.

[4] Finally, the Court cautions Plaintiff to be very careful in crafting additional pleadings and motions. The Court has previously provided significant guidance to Plaintiff, and Plaintiff has had ample opportunities to correct defective pleadings. Plaintiff is advised to consider the burden his prolix pleadings place on the court, as well as the litigants. See *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Further improper filings will not be tolerated. Although the right to self-representation is absolute, Plaintiff is strongly encouraged to procure the aid of counsel if he wishes to proceed.